IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| STEPHEN K. HANN, | § | CASE NO.  12-31500 |
| | § | |
| Debtor | § | |
| | § | |
| SAEED KAHKESHANI | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 12-03256 |
| | § | |
| STEPHEN K.  HANN | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING CLAIMS UNDER 11 U.S.C. §523(A), AND REQUEST FOR ORAL ARGUMENT**

1032582

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     PROCEDURAL BACKGROUND.............................................................4

    A.      State court litigation..............................................................................4

    B.      Bankruptcy, removal, and §§523/727 action. ......................................5

    C.      Arbitration and award in favor of Kahkeshani. ...................................5

    D.      Motion practice since the Award. .........................................................6

III.    THE SUBSTANCE OF THE AWARD ....................................................9

    A.      The Award clearly establishes that Hann acted knowingly, intentionally, and
        with the intent to defraud under the Trust Fund Statute. ......................9

        1.      Kahkeshani was a beneficiary of the trust funds. ...............10

        2.      Hann was aware of his obligations under the Trust Fund Statute and the
            violations thereof. ...............................................................10

        3.      Hann had direct and exclusive control of trust funds. ........12

        4.      Hann knew that expenses of SKH were not being paid.......13

        5.      Hann misused trust funds with the intent to deprive Kahkeshani of the
            funds.....................................................................................13

        6.      Hann misrepresented his and SKH's financial condition. ...16

        7.      Hann is liable under §§162.031 and 162.005(1)(A). ...........16

        8.      The damages provided in the Award of the Trust Fund Statute are net of
            the statutory safe harbors. ...................................................18

    B.      Determination of fraudulent misrepresentations and alter ego finding. ....................18

    C.      Damages found in the Award. .............................................................19

IV.     RELIEF REQUESTED..............................................................................19

V.      BASIS OF RELIEF ...................................................................................20

    A.      Summary of Basis of Relief.................................................................20

    B.      Kahkeshani is entitled to summary judgment on the §523(a) claims. .........................20

    C.      The preclusive effect of the Award for Kahkeshani's claims under §523(a). .............22

        1.      The determinations of the Award are collateral estoppel for
            Kahkeshani's §523(a) claims. .............................................22

        2.      Comment *i* of the Restatement (Second) of Judgments does not apply. ...........27

    D.      The Award requires entry of judgment against Hann pursuant to 11 U.S.C.
        §523(a). ................................................................................................32

1032582

1. Hann's discharge should be denied under §523(a)(4) for defalcation of fiduciary duty. ......................................................................................33

    a. Hann is liable to Kahkeshani under the Trust Fund Statute......................36

    b. Kahkeshani's damages are nondischargeable under the Fifth Circuit's application of §523(a)(4) to the Trust Fund Statute...................35

    c. The results of *Boyle* and its progeny are distinguishable from this case........................................................................................................42

    d. Texas bankruptcy courts have entered §523(a)(4) judgment in similar cases. ...............................................................................................44

    e. Kahkeshani is entitled to judgment under §523(a)(4)................................45

2. Hann's discharge should be denied under §523(a)(2) for fraud or false misrepresentations / false pretenses. ..................................................47

    a. §523(a)(2)(A) actual fraud. .......................................................................47

    b. §523(a)(2)(A): False Pretenses and False Representations. .....................51

3. Hann's discharge should be denied §523(a)(6): Willful and malicious injury. ....................................................................................................55

E. Dischargeability of debt via alter ego / piercing the of the corporate veil theories ..........................................................................................................58

VI. REQUEST FOR ORAL ARGUMENT ..........................................................60

VI. CONCLUSION AND PRAYER ....................................................................60

1032582

## <u>TABLE OF AUTHORITIES</u>

### *<u>United States Supreme Court Cases</u>*

Bullock v. Bankchampaign, N.A.,
133 S. Ct. 1754 (2013)............................................................................................7, 35

Field v. Mans, 516 U.S. 59, 116 S. Ct. 437,
133 L. Ed. 2d 351 (1995)......................................................................................52, 54

Grogan v. Garner, 498 U.S. 279, 112 L. Ed.
2d 755, 111 S. Ct. 654 (1991)....................................................................................23

Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct.
974, 140 L. Ed. 2d 90 (1998).....................................................................................55

### *<u>United States Supreme Courts of Appeal Cases</u>*

Allison (In re), 960 F.2d 481 (5th Cir. 1992) ......................................................47, 52

Angelle (In re), 610 F.2d 1335 (5th Cir. 1980)............................................................36

AT&T Universal Card Servs. v. Mercer
(In re Mercer), 246 F.3d 391 (5th Cir. 2001)..............................................................52

Bank of La. v. Bercier (In re Bercier),
934 F.2d 689  (5th Cir. 1991) ....................................................................................47

Bennett v. Bennett (In re Bennett),
989 F.2d 779  (5th Cir. 1993) ....................................................................................36

Boyle v. Abilene Lumber, Inc., 819 F.2d 583
(5th Cir.1987)........................................................................................... 3, 33, 38-45

Cardwell v. Gurley (In re Cardwell), 487 Fed.
App'x 183  (5th Cir. 2012) ........................................................................................22

Caspers v. Van Horne (In re Van Horne),
823 F.2d 1285 (8th Cir. 1987) ...................................................................................52

Chrysler Credit Corp. v. Perry Chrysler
Plymouth, Inc., 783 F.2d 480  (5th Cir. 1986)...........................................................55

Coburn Co. v. Nicholas (In re Nicholas),
956 F.2d 110 (5th Cir. 1992) ......................................................... 3, 32, 38-45

1032582

Commerce Bank & Trust Co. v. Burgess
(In re Burgess), 955 F.2d 134 (1st Cir. 1992) ...............................................................52

First Bank of Colo. Springs v. Mullet
(In re Mullet), 817 F.2d 677 (10th Cir. 1987)...............................................................52

Friendly Fin. Service - Eastgate v. Dorsey
(In re Dorsey), 505 F.3d 395 (5th Cir. 2007)...............................................................47

Gen. Elec. Capital Corp. v. Acosta (In re Acosta),
406 F.3d 367 (5th Cir. 2005) ........................................................................ 47-49

Gober v. Terra + Corp. (In re Gober),
100 F.3d 1195  (5th Cir. 1996) .................................................................................23

Greenblatt v. Drexel Burnham Lambert, Inc.,
763 F.2d 1352  (11th Cir. 1985) ...............................................................................22

Martin (In re), 963 F.2d 809 (5th Cir. 1992) ...............................................................48

Mayer v. Spanel Int'l (In re Mayer),
51 F.3d670 (7th Cir. 1995) .......................................................................................52

Miller v. J.D. Abrams, Inc. (In re Miller),
156 F.3d 598 (5th Cir. 1998) ..............................................................................36, 55

Moreno v. Ashworth (In re Moreno),
892 F.2d 417  (5th Cir. 1990) ...................................................................................37

Norris (In re), 70 F.3d 27 (5th Cir. 1995) ...................................................................48

Pancake v. Reliance Ins. Co. (In re Pancake),
1997 U.S. App. LEXIS 12991 (5th Cir. 1997) ...........................................................24

Quinlivan (In re), 434 F.3d 314, 319 (5th Cir. 2005) .................................................51

Raspanti v. Keaty (In re Keaty),
397 F.3d 264 (5th Cir. 2005) ....................................................................................55

Ratliff Ready-Mix, L.P. v. Pledger (In re Pledger),
592 Fed. Appx. 296 (5th Cir. 2015) .................................................................. 3, 38-43

Recoveredge L.P. v. Pentecost,
44 F.3d 1284 (5th Cir. 1995) ...............................................................23, 24, 47, 51, 52

1032582

Schwager v. Fallas (In re Schwager),
121 F.3d 177  (5th Cir. 1997) .......................................................................28, 29, 37

Sheerin v. Davis (In re Davis),
3 F.3d 113  (5th Cir. 1993) ...................................................................................24, 25

Swor (In re), 347 Fed.Appx. 113  (5th Cir. 2009) ....................................37, 38, 41, 43

Talcott v. Friend, 179 F. 676 (7th Cir. 1909) ..............................................................53

Thul v. Ophaug (In re Ophaug),
827 F.2d 340 (8th Cir. 1987) ......................................................................................52

Univ. Am. Barge Corp. v. J-Chem, Inc.,
946 F.2d 1131  (5th Cir. 1991) ...................................................................................23

Williams v. IBEW Local 520 (In re Williams),
337 F.3d 504, 509 (5th Cir. 2003) ..............................................................................55

### *United States District Court Cases*

Gen. Elec. Capital Corp. v. Acosta (In re Acosta),
2003 U.S. Dist. LEXIS 23450 (E.D. La. 2003) ..........................................................52

Milliken v. Grigson, 986 F. Supp. 426 (S.D. Tex. 1997) ............................................23

S. Atl. Neurology and Pain Clinic, P.C. v. Lupo
(In re Lupo), 353 B.R. 534 (N.D. Ohio 2006) ............................................................59

T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber),
2008 U.S. Dist. LEXIS 89438, 2008 WL 4831380 (S.D. Tex. 2008) ....................3, 44

### *United States Bankruptcy Court Cases*

Arendondo v. Thomas (In re Thomas),
2005 Bankr. LEXIS 284 (Bankr. N.D. Tex. 2005).......................................................25

AT&T Universal Card Servs. Corp. v. Bonnifield
(In re Bonnifield), 154 B.R. 743 (Bankr. N.D. Cal. 1993) ...........................................53

Barch v. Cokkinias (In re Cokkinias),
28 B.R. 304 (Bankr. D. Mass. 1983) ...........................................................................53

Chavez (In re), 140 B.R. 413 (Bankr. W.D. Tex. 1992).........................................36, 53

Crain v. Limbaugh, 155 B.R. 952 (Bankr. N.D. Tex. 1993) .......................................23

1032582

Horne v. Horne, 2011 Bankr. LEXIS 451 (Bankr. W.D. Tex. 2011) ...........................................25

Hughes v. Wells (In re Wells),
2006 Bankr. LEXIS 330 (Bankr. N.D. Tex. 2006) ......................................................................52

Int'l Beauty Prods., LLC v. Beveridge (In re Beveridge),
416 B.R. 552 (Bankr. N.D. Tex. 2009) ...................................................................47, 49, 55, 56

ITT Fin. Servs. v. Hulbert (In re Hulbert),
150 B.R. 169 (Bankr. S.D. Tex. 1993) .......................................................................................53

Lisa Ng v. Adler (In re Adler),
494 B.R. 43 (Bankr. E.D.N.Y. 2013) .........................................................................................59

McDaniel (In re), 181 B.R. 883 (Bankr. S.D. Tex. 1994) ...........................................................37

Pollock v. Marx (In re Marx),
171 B.R. 218  (Bankr. N.D. Tex. 1994)........................................................................23, 25, 27

Sanders v. Muhs (In re Muhs), 2011 Bankr.
LEXIS 3032, 2011 WL 3421546 (Bankr. S.D. Tex. 2011) ........................................................48

Sec. Investory Prot. Corp. v. Rounds (In re Rounds),
2010 Bankr. LEXIS 6521 (Bankr. D. Colo. 2010) .....................................................................59

Smereczynsky (In re), 2012 Bankr. LEXIS
6050 (Bankr. N.D. Ga. 2012)......................................................................................................21

TC v. Abeyta (In re Abeyta),
387 B.R. 846 (Bankr. D.N.M. 2008) ..........................................................................................21

Tripp (In re), 189 B.R. 29 (Bankr. N.D.N.Y. 1995) ....................................................................37

Viking Dynamics, Ltd. v. O'Neill (In re O'Neill),
260 B.R. 122 (Bankr. E.D. Tex. 2001) .......................................................................................25

Vizzini v. Vizzini (In re Vizzini),
348 B.R. 339 (Bankr. E.D. La. 2005) .........................................................................................51

Vulcan Constr. Materials, LP v. Kibel (In re Kibel),
2001 Bankr. Lexis 1042 (Bankr. W.D. Tex. 2011) ................................................................3, 45

Ward Family Found. v. Arnette (In re Arnette),
454 B.R. 663 (Bankr. N.D. Tex. 2011) .......................................................................................51

Willard (In re), 482 B.R. 344  (Bankr. D. N.M. 2012) ................................................................21

1032582

Winn v. Holdaway (In re Holdaway),
388 B.R. 767 (Bankr. S.D. Tex. 2008) ................................................................50

***State Supreme Court Cases***

Eagle Properties, Ltd. v. Scharbauer,
807 S.W.2d 714 (Tex. 1990).........................................................................28,29

Ruegsegger v. McCarley, 262 Or. 157,
496 P.2d 214 (Or. 1972) ................................................................................53

***Federal Statutes***

9 U.S.C. §12..............................................................................................28, 31, 43

11 U.S.C. §523........................................................................................... passim

Tex. Prop. Code. §162.002 ....................................................2, 11-12, 33+40

Tex. Prop. Code. §162.003 ........................................................................2, 40

Tex. Prop. Code. §162.005 ........................................................................ passim

Tex Prop. Code §162.006 ..........................................................................11, 34

Tex. Prop. Code. §162.031 ........................................................................ passim

***Treatises***

4 Collier on Bankruptcy ¶ 523.08 (16th Ed. 2014) ...................................52

4 Collier on Bankruptcy ¶ 523.12(4) (16th ed. 2014) ..............................55

4 Collier on Bankruptcy ¶ 523.10 (16th Ed. 2014) ...................................37

Restat. 2d of Judgments, §27 (1982) .................................................... 27-31

1032582

TO THE HONORABLE KAREN K. BROWN, U.S. BANKRUPTCY JUDGE:

Saeed Kahkeshani ("Kahkeshani" or the "Plaintiff"), a creditor and party in interest and Plaintiff in the above-captioned action, files this *Plaintiff's Motion for Summary Judgment Regarding Claims Under 11 U.S.C. §523(a) and Request for Oral Argument* seeking the dischargeability of an arbitration award against Stephen K. Hann ("Hann" or the "Debtor") and in support thereof would show the Court the following.

## I.    INTRODUCTION

1.    At minimum, and most directly, Kahkeshani's claims against Hann are nondischargeable pursuant to 11 U.S.C. §523(a)(4) for fraud or defalcation of fiduciary duty.[1]

2.    Kahkeshani contracted with Hann and SKH 2000, Inc. ("SKH 2000") to perform a remodeling project on Kahkeshani's residence.   Hann and SKH commenced but did not complete the remodeling project.   Kahkeshani sued Hann and SKH in state court, which action was removed to this Court by Hann and resulted in a Final Arbitration Award in favor of Kahkeshani, a copy of which is attached hereto as **Exhibit 1** and is incorporated by reference herein (the "Award").

---

[1] As set forth below, Kahkeshani also shows the liability of Hann under §523(a)(2) and (6).

3.    The Award finds and concludes all of the elements that are necessary for judgment under Chapter 162 of the Texas Property Code, the Texas Construction Trust Fund Statute (the "Trust Fund Statute") and 11 U.S.C. §523(a)(4).  The Award finds and concludes that Hann is *individually and directly* liable to Kahkeshani for the misuse of construction trust funds under the Trust Fund Statute, and particularly under §§162.005(1)(A) and 162.031.

4.    As contained in the Award:

    a.    Kahkeshani as the owner of the residential property[2] was a beneficiary of the trust funds.[3]

    b.    Hann was a trustee of the funds paid by Kahkeshani to SKH.[4]

    c.    Hann misapplied the trust funds by internationally, knowingly, and with intent to defraud because Hann directly used, disbursed, or otherwise diverted trust funds for (*i*) his own personal expenses and benefit,[5] (*ii*) for the payments of the debts of Hann Builders, Ltd. ("HBL") (another company solely owned and controlled by Hann), and (*iii*) for debts of SKH unrelated to the Kahkeshani project.[6]

---

[2] Award  at p. 3, ¶ 10, first bullet.

[3] *See* Tex. Prop. Code. §162.003(b) (owner of residence is beneficiary).

[4] Award at p. 15, ¶ 20; *see also*, Tex. Prop. Code. §162.002 (owner, officer or director of contractor is a trustee of construction trust funds).

[5] Award at p.12, ¶¶ 13-14; p. 13, ¶ 15, p. 14, ¶ 19.*see also,* Tex. Prop. Code §162.031(a) §162.031(a) describes intentional, knowing, or with intent to defraud in the disjunctive whereas the Award determines that Hann's conduct fulfilled each of the three categories.

[6] Award at pp. 15-16, ¶ 22.

1032582

     d.     Hann's conduct fell within the *"intent to defraud"* rubric under the Trust Fund Statute[7] because Hann misused the trust funds with the intent to deprive Kahkeshani of the trust funds.[8]

     e.     The damages awarded in the Award are net of, and Hann was given credit for, overhead expenses, liens paid by Hann, and the value of work performed.[9]

5.     Hann's misuse of trust funds occurred intentionally, knowingly, and with the intent to defraud.[10]

6.     The claims of Kahkeshani arising from Hann's violations of the trust fund statute with the intent to defraud easily fall within the discharge exceptions of §523(a)(4) for the defalcation of fiduciary duty.[11]

7.     The liability for Hann for violations of the Trust Fund Statute is direct and individual because of Hann's role as a trustee.  Hann's liability under the Trust Fund Statute is separate, discreet, and independent from the liability of SKH for fraudulent misrepresentation and the resulting alter ego liability of Hann.

---

[7] Tex. Prop. Code §162.005(1).

[8] Award at p. 15, ¶ 21; *see also,* Tex. Prop. Code §162.005(1)(A) ("A trustee acts with "intent to defraud" when the trustee: (A)  retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds"

[9] Award at p. 17-18, ¶ 28-29; *see also Ratliff Ready-Mix, L.P. v. Pledger (In re Pledger),* 592 Fed. Appx. 296, 302 (5th Cir. 2015).

[10] Kahkeshani need only demonstrate that Hann's misuse of funds occurred with one of the three mental states of §162.031(intentional, knowing, *__or__* with intent to defraud) in order to obtain nondischargeability under §523(a)(4).  The Award shows that Hann's conduct was intentional, knowing, *__and__* with the intent to defraud under §162.031.

[11] *See Pledger, supra;* 592 Fed. Appx. at 302; *Coburn Co. v. Nicholas (In re Nicholas)*, 956 F.2d 110, 111 (5th Cir. 1992); *Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583. 592 (5th Cir.1987); *T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber),* 2008 U.S. Dist. LEXIS 89438, 36-49, 2008 WL 4831380 (S.D. Tex. Nov. 3, 2008); *Vulcan Constr. Materials, LP v. Kibel (In re Kibel),* 2001 Bankr. Lexis 1042, at *3-5 (Bankr.W.D.Tex. 2011).

1032582

8.     Accordingly, at a minimum, Kahkeshani is entitled to judgment that the damages awarded in the Award are nondischargeable pursuant to 11 U.S.C. §523(a)(4).

## II.     PROCEDURAL BACKGROUND

### A.  State court litigation.

9.     On February 22, 2011, Kahkeshani filed Case No. 2011-11105 in the 133rd Judicial District Court in and for Harris County against Hann and SKH.[12]

10.    Case No. 2011-11105 stemmed from a residential remodeling and construction contract that Kahkeshani had entered into with SKH relating to Kahkeshani's home on or about May 18, 2010.[13]

11.    The claims of Kahkeshani against Hann asserted in Case No. 2011-11105 included causes of action for breach of contract, violations of the Trust Fund Statute, breach of express trust, common law and statutory fraud, alter ego, piercing of the corporate veil, single business enterprise, fraudulent transfer, unjust enrichment, money had and received, constructive trust, and theft.[14]

---

[12] *See* Adv. No. 12-03196, Docket No. 1, Ex. / Attachment #2.

[13] *See id*; *see also* Award at 8, fourth bullet.

[14] *See* Adv. No. 12-03196, Docket No. 1.

1032582

### B. **Bankruptcy, removal, and §§523/727 action.**

12.    On February 29, 2012, Hann commenced the underlying bankruptcy case, Case No. 12-31500.[15]

13.    On April 12, 2012, Hann removed Case No. 2011-11105 to this Court whereupon it was assigned Adv. No. 12-03196.[16]

14.    On May 25, 2012, Kahkeshani commenced Adv. No. 12-03256 against Hann asserting that the claims and causes of action at issue in Case No. 2011-11105 and Adv. No. 12-03196 resulted in liability that is nondischargeable under 11 U.S.C. §523 and that Hann should be denied a discharge pursuant to 11 U.S.C. §727.[17]

### C. **Arbitration and award in favor of Kahkeshani.**

15.    On July 9, 2012, Hann moved to compel arbitration of the disputes between Kahkeshani and the Hann Defendants.[18]   On March 29, 2015, the Court without hearing granted Hann's arbitration request.[19]   Kahkeshani sought reconsideration of the Court's arbitration order.[20]

---

[15] *See* Case No. 12-31500, Docket No. 1, Ex. / Attachment #2.

[16] *See* Adv. No. 12-03196, Docket No. 1.

[17] *See* Adv. No. 12-03256, Docket No 1.  Kahkeshani reserves the right to file a motion to dismiss the §727(a) causes of action asserted in the Complaint in Adv. No. 12-03256.

[18] *See* Adv. No. 12-03196, Docket No. 23.

[19] *See* Adv. No. 12-03196, Docket No. 24.

[20] *See* Adv. No. 12-03196, Docket Nos. 29, 30.

1032582

16.     At a hearing on April 10, 2013 and a docket entry of the same date, the Court ordered that the parties submit to arbitration the state law claims and causes of action at issue in Adv. No. 12-03196[21] and by implication the claims underlying the §523(a) claims in Adv. No. 12-03256.  As reflected in a status conference held on April 10, 2013 in these adversary proceedings, upon the issuance of the arbitration award, this Court would determine all §523(a) dischargeability issues based upon the arbitration award.

17.     The arbitration was conducted in October and November, 2013.  The parties introduced into evidence the testimony of twelve witnesses,[22] and at least 59 exhibits were admitted into evidence by the arbitrator.[23]

18.     On April 8, 2014, the arbitrator issued the Award.[24]

**D. Motion practice since the Award.**

19.     On June 7, 2014, Kahkeshani filed the *Motion of Saeed Kahkeshani to (I) Confirm Arbitration Award and (II) Enter Judgment Pursuant to 11 U.S.C. §523(a)* (the "Motion to Enter Judgment").[25]

---

[21] *See* Adv. No. 12-03196, Docket No. 24, docket entry dated April 10, 2103 regarding status conference and minutes order therein.

[22] Award at pp. 2-3, ¶ 8.

[23] Award at p. 3, ¶ 9.

[24] Award at p. 19.

[25] *See* Adv. No. 12-03196, Docket No. 45; Adv. No. 12-03256, Docket No. 36.

1032582

20.     On or about June 26, 2015, Hann filed an amended Motion to Enter Judgment.[26]

21.     On July 31, 2015, Hann filed a response to the Motion to Enter Judgment.[27]

22.     On August 14, 2015, Kahkeshani filed a reply regarding Hann's response to the Motion to Enter Judgment. [28]

23.     On August 25, 2014, the Court conducted a hearing on the Motion to Enter Judgment.[29]  The Court directed the parties to file further brief regarding the impact of *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754, 1759-60 (2013) on these proceedings.

24.     On September 8, 2014, Kahkeshani filed his supplement brief regarding *Bullock*. [30]

25.     On September 15, 2014, Hann filed his supplement brief regarding *Bullock*. [31]

26.     On October 30, 2014, Hann filed a pleading entitled a *Request for Hearing* which pleading was unsolicited by the Court.[32]

---

[26] *See* Adv. No. 12-03196, Docket No. 47; Adv. No. 12-03256, Docket No. 37.

[27] *See* Adv. No. 12-03196, Docket No. 65; Adv. No. 12-03256, Docket No. 43.

[28] *See* Adv. No. 12-03196, Docket No. 66; Adv. No. 12-03256, Docket No. 37.

[29] *See* Adv. No. 12-03196, docket entry and courtroom minutes for August 25, 2014.

[30] *See* Adv. No. 12-03196, Docket No. 73; Adv. No. 12-03256, Docket No. 46.

[31] *See* Adv. No. 12-03196, Docket No. 75; Adv. No. 12-03256, Docket No. 48.

1032582

27.     On January 12, 2015, Hann filed another pleading entitled *Brief* which pleading was unsolicited by the Court.[33]

28.     On January 22, 2015, Kahkeshani filed a *Motion to Strike* regarding the *Request for Hearing* and the *Brief of Hann*,[34] to which Motion to Strike a response was filed by Hann.[35]  To date, no order has been entered on the Motion to Strike.

29.     On February 17, 2015, the Court entered an order denying the Motion for Judgment.[36]

30.     On March 3, 2015, Kahkeshani filed a *Motion to Reconsider* the order denying the Motion to Enter Judgment,[37] and Hann responded to the *Motion to Reconsider*.[38]

31.     To date, no order has been entered on the *Motion to Reconsider*.

32.     At a pretrial conference on May 21, 2015, the Court indicated that an order would be entered in Cause 12-03196 to confirm and enter the Award, and the

---

[32] *See* Adv. No. 12-03196, Docket No. 78; Adv. No. 12-03256, Docket No. 51.

[33] *See* Adv. No. 12-03196, Docket No. 80; Adv. No. 12-03256, Docket No. 52.

[34] *See* Adv. No. 12-03196, Docket No. 81; Adv. No. 12-03256, Docket No. 53.

[35] *See* Adv. No. 12-03196, Docket No. 83; Adv. No. 12-03256, Docket No. 56.

[36] *See* Adv. No. 12-03196, Docket No. 84; Adv. No. 12-03256, Docket No. 57.

[37] *See* Adv. No. 12-03196, Docket No. 89; Adv. No. 12-03256, Docket No. 66.

[38] *See* Adv. No. 12-03196, Docket No. 93; Adv. No. 12-03256, Docket No. 70.

1032582

Court established a briefing schedule for the parties to submit additional motions for summary judgment in Adv. No. 12-03256.[39]

### III.   THE SUBSTANCE OF THE AWARD

33.    The arbitration decided all of the claims and causes of action that are at issue in Case No. 2011-11105/Adv. No. 12-03196 (the original action) and that are at issue in this action Adv. No. 12-03256 (the discharge determination action) with respect to the state law claims underlying the §523(a) claims of Kahkeshani, thus providing the ground and basis for the entry of a judgment in favor of Kahkeshani on nondischargeability.

34.    As stated, the Court on May 21, 2015 indicated that Kahkeshani was entitled to judgment in 12-03196 confirming the Award.

### A.    The Award clearly establishes that Hann acted knowingly, intentionally, and with the intent to defraud under the Trust Fund Statute.

35.    As set forth in Exhibit 1, and particularly in Paragraph No. 21, the Award finds and concludes that Hann directly and individually misapplied trust funds intentionally, knowingly, and with the intent to defraud under §§162.005(1)(A) and 162.031 of the Trust Fund Statute by retaining, using,

---

[39] *See* Adv. No. 12-03196, docket entry dated May 21, 2015.  To the extent that any issues remain open in 12-03196 after the Court's acceptance of the Award, this Motion should be construed to also request relief in 12-03196.

disbursing, and diverting the trust funds to the personal expenses of Hann the past debts of Hann, and/or the past debts of HBL, and to unrelated expenses of SKH.[40]

> 21.    Respondents argue that there is no evidence of the requisite "intent to defraud" as defined by Section 162.005(1) Tex. Prop. Code. Respondents' counsel concedes that "SKH 2000 may have acted negligently or even with gross negligence." (Pete Patterson's undated letter/brief regarding Trust Fund Statute, p. 2). Under 162.005(1)(A), a trustee acts with "intend to defraud" when the trustee "retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds." In the case at bar, the evidence proved that Stephen Hann used, disbursed or diverted trust funds with intent to deprive the beneficiaries of the trust funds.

36.    The Award reaches this result after meticulously detailing the conduct of Hann and the mismanagement of construction trust funds supplied by Kahkeshani.

**1.  Kahkeshani was a beneficiary of the trust funds.**

37.    Kahkeshani was a beneficiary of the trust funds received by SKH.[41]

**2.  Hann was aware of his obligations under the Trust Fund Statute and the violations thereof.**

38.    Hann individually was aware of the Trust Fund Statute.[42]

---

[40] Award at p. 11, ¶ 11.  Note that wording of §162.005(1)(A) is disjunctive – "retaining, using, disbursing, _or_ diverting" (Emphasis added).

[41] Award at p. 15, ¶ 20.

[42] Award at p. 13, ¶ 15.

1032582

39.     Hann individually admitted and confirmed that he was aware of the Trust Fund Statute.[43]

40.     Hann individually was the sole shareholder, director, and officer of SKH.[44]

41.     As officer, director, and owner of SKH, Hann individually was a trustee of the funds paid by Kahkeshani.[45]

42.     Hann individually knew that subcontractor's and suppliers on Kahkeshani's house were not being paid with Kahkeshani's money.[46]

43.     Hann individually knew that Kahkeshani's payments for draw requests were supposed to be used to pay the subcontractors and suppliers who furnished labor and materials for Kahkeshani's house.[47]

44.     Hann opened an account at Prosperity Bank titled "SKH 2000, Inc. dba Hann Builders Construction Trust Account.[48]

45.     The "trust fund" designation of the account demonstrates that Hann individually was aware of his obligations under §162.006 to deposit funds into a construction account, and to treat the payments from his customers as trust funds.[49]

---

[43] Award at p. 13, ¶ 15, at p. 17, ¶ 13.

[44] Award at p. 15, ¶ 20.

[45] Award at p. 15, ¶ 20; *see also,* Tex. Prop. Code §162.002.

[46] Award at p. 15, ¶ 22.

[47] Award at pp. 15-16, ¶ 22.

[48]  Award at p. 13, ¶ 17; *see also,* Tex Prop. Code §162.006 (contractor required to open construction account, use "construction account" in the account name).

46.     Hann's practices disregard the obligations of the Trust Fund Statute. [50]

### 3.  Hann had direct and exclusive control of trust funds.

47.     Beyond the role of construction trusts fund trustee created by statute,[51] Hann had direct and exclusive control of the funds of SKH.[52]

48.     Hann individually decided which bills to pay and not pay each week from the color coded spreadsheets, separated by SKH and HBL[53].

49.     The office manager Jill Fry never paid anyone without Hann's express permission.[54]

50.     Hann approved the percentage of completion of each draw request.[55]

51.     Hann had knowledge of who was and was not receiving checks.[56]

52.     Hann made weekly decisions on who would be paid.[57]

53.     Hann knew that payments were being made to the creditors of Hann and of HBL.[58]

---

[49] Award at p. 3, ¶ 17.

[50] Award at pp.14-15, ¶¶ 18-22.

[51] *See* Tex. Prop. Code §162.002.

[52] Award at p. 7, fifth bullet ("Decisions about who pay each week were made by Hann."); last bullet on p. 7 to p. 8. (Frey testified that Hann decided who would be paid); at p. 8, first bullet, (Frey never paid any one without permission of Hann); at p. 10, first bullet (checks prepared but held at Hann's instructions; Hann knew who was and was not receiving checks).

[53] Award at p. 7, last bullet.

[54] Award at p. 8, first bullet.

[55] Award at p. 8, second bullet.

[56] Award at p. 7, last bullet; p. 10, first bullet.

[57] Award at p. 7, last bullet, to top of p. 8; p. 11, ¶ 12; p. 13, ¶ 15; p. 15, ¶ 22.

1032582

54.     Hann instructed employees to hold checks that had been prepared to be sent out upon his instructions.[59]

### 4.  Hann knew that expenses of SKH were not being paid.

55.     Hann reviewed expenses on a weekly basis.[60]

56.     Hann was the person who determined who would and who would not be paid with the bank account of SKH.[61]

57.     Hann individually knew what expenses of SKH and HBL had accrued and were owed, and which expenses had been paid in what amounts and when, and what amounts would be paid to whom and when, on a weekly basis.[62]

58.     Hann knew that SKH did not have sufficient funds to otherwise pay the vendors who had provided labor and materials for Kahkeshani's house.[63]

### 5. Hann misused trust funds with the intent to deprive Kahkeshani of the funds.

59.     Hann individually and directly misused the trust funds paid to SKH by Kahkeshani with the intent to deprive Kahkeshani of the trust funds.

---

[58] Award at p. 7, fifth bullet.

[59] Award at p. 10, first bullet.

[60] Award at pp.7-8, last bullet, p. 7 to top of p. 8; p. 11, ¶ 12; p. 13, ¶ 15; p. 15, ¶ 22.

[61] Award at pp.7-8, last bullet, p. 7 to top of p. 8; at p. 13, ¶ 15.

[62] Award at pp. 7-8, last bullet p. 7 to top of p. 8; at p. 9, third and last bullets (Hann conversations with Tim Stromatt regarding unpaid claims against SKH); p. 10, fourth bullet; p. 11, ¶ 12; p. 12, ¶ 14; p. 13, ¶ 15; p. 15, ¶ 22.

[63] Award at p. 7, third and fourth bullets; pp. 7-8, last bullet p. 7 to top of p. 8; p. 8, third and last bullets; at p. 9, third and last bullets (Hann conversations with Tim Stromatt regarding unpaid claims against SKH); p. 10, first bullet.

1032582

    a.  Hann individually used Kahkeshani's funds for his own personal use and benefit, including the past expenses of HBL.[64]

    b.  Within days of receiving payment from Kahkeshani, Hann individually caused payments to be made either to himself or to HBL's creditors or Hann's own creditors. [65]

60.    Examples of Hann misusing the trust funds paid by Kahkeshani include the following as found in the Award. Paragraph 13 of the Award contains the following list.

> Within days of receiving payments from Claimant, Stephen Hann caused payments to be made either to himself, or to HBL's creditors (including Andrew and Traci Pelter), or to Stephen Hann's own creditors (such as Michael Cox), or to Stephen Hann's judgment creditors, Dale and Susan Benditz (who had obtained an arbitration award against Stephen Hann).[66]

61.    Paragraph 18 of the Award provided the following examples.

> The following illustrations are examples of Respondents' submitting draw requests, receiving payments from Claimant and diverting trust funds without first fully paying all current or past due obligations incurred by SKH (a trustee) to the subcontractors and suppliers who worked on Claimant's house (beneficiaries of the trust funds).  On August 5, 2010, SKH received a $37,222 payment from Claimant. Between August 5 and August 27, 2010 (when an additional draw for $142,000 was submitted by SKH to Claimant), not a single check was paid to subcontractors or suppliers that worked on Claimant's house. On November 10, 2010, an additional $31,000 was wired to SKH's 411 account from Claimant's bank.  Between November 10 and November 16, 2010, no contractors or suppliers that work on Claimant's house were paid (although Tim Stromatt and Mike Tisdale, SKH's employees were paid).  On November 17, 2010, SKH

---

[64] Award at p.12, ¶¶ 13-14; p. 13, ¶ 15; p. 14, ¶ 19.

[65] Award at p.12, ¶¶ 13-14; p. 13, ¶ 15; p. 14, ¶ 19.

[66] Award at p. 12, ¶ 13.

1032582

submitted an additional draw request to Claimant for $52,974. Paragraph 19 of the Award provided the following examples.[67]

62.   Paragraph 19 of the Award provided the following examples.

After November 17, 2010, SKH received a wire transfer of $52,974 from Claimant's bank; a check from Claimant in the amount of $12,528 was deposited in SKH's account on December 15, 2010; and an additional $23,500 was wired to SKH from Claimant's bank on December 16, 2010.  Notwithstanding SKH's receipt of such trust funds, after November 17, 2010, only two payments were made to subcontractors or suppliers on Claimant's house: a $3,000 payment on November 18, 2010 to Joe's Carpenters and a $2,980 payment on December 13, 2010 to Ferguson Enterprises.  After November 17, 2010, payments were made to Stephen Hann personally, to Stephen Hann's personal creditors (Pelter, Benditz, Cox, Boggio), and to HBL's creditors.  It is reasonable to conclude that by making such payments, at a time when SKH had current or past due obligations to trust beneficiaries, *Respondents intended to deprive the beneficiaries of their trust funds*.[68]

63.   Thus, "Hann made or caused to be made payments for his own benefit, using trust funds, paid by Kahkeshani, when [Hann] knew that subcontractors and suppliers for Kahkeshani's house  were not being paid."[69]

64.   "Hann's plan, intent, or method was to use funds without regard to the construction project(s) for which payment had been made."[70]

65.   "Hann's practice was to use the [Kahkeshani] funds to pay, among other things, HBL's creditors and his own personal creditors, and then to attempt to

---

[67] Award at p. 14, ¶ 18.

[68] Award at pp. 14-15, ¶ 19 (emphasis added).

[69] Award at p. 12, ¶14.

[70] Award at p. 12, ¶14.

increase cash flow to cover construction costs that remained unpaid.[71]  The project that Hann had hoped to materialize to cover the shortfall on the SKH project did not materialize.[72]  Because of the payments from SKH to Hann, Hann's creditors, or HBL's creditors, there was less money remaining to pay the beneficiaries of the trust created with Kahkeshani's funds.[73].

### 6.  Hann misrepresented his and SKH's financial condition.

66.    Further demonstrating the fraudulent intent to deprive Kahkeshani of the trust funds, in December, 2010, Hann misrepresented to Kahkeshani that HB was operating profitably.[74]

67.    Kahkeshani's contract was signed on or about May 18, 2010.[75]

68.    By the summer of 2010, Hann knew that SKH was having financial difficulties.[76]

### 7.  Hann is liable under §§162.031 and 162.005(1)(A).

69.    Consequently, the evidence proved that Hann used, disbursed, or diverted trust funds intentionally, knowingly, and *with the intent to deprive* the beneficiaries of the funds.[77]

---

[71] Award at p. 12, ¶14.

[72] Award at p. 12, ¶14.

[73] Award at p. 12, ¶13.

[74] Award at p. 10, fifth bullet.

[75] Award at p. 8, fourth bullet.

[76] Award at p. 7, third bullet.

70.     No payments were made without Hann's knowledge and approval. [78]

71.     Hann had actual awareness of the practice that was being perpetrated.[79]

72.     "[Hann] had to have known from that he was using [Kahkeshani]'s funds to pay expenses unrelated to Claimant's house.  No other conclusion is reasonably inferable from the evidence."[80]

73.     Accordingly, per the Award, Hann is liable to Kahkeshani under §§162.005(1)(A) and 162.031.

> 21.     Respondents argue that there is no evidence of the requisite "intent to defraud" as defined by Section 162.005(1) Tex. Prop. Code.  Respondents' counsel concedes that "SKH 2000 may have acted negligently or even with gross negligence."  (Pete Patterson's undated letter/brief regarding Trust Fund Statute, p. 2).  Under 162.005(1)(A), a trustee acts with "intend to defraud" when the trustee "retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds."  In the case at bar, the evidence proved that Stephen Hann used, disbursed or diverted trust funds with intent to deprive the beneficiaries of the trust funds.

---

[77] Award at pp. 15-16, ¶ 24.

[78] Award at p. 15-16, ¶ 22.

[79] Award at p. 15-16, ¶ 22.

[80] Award at p. 15-16, ¶ 22.

1032582

**8.   The damages provided in the Award of the Trust Fund Statute are not of the statutory safe harbors.**

74.    The $371,972.13 in damages awarded to Kahkeshani in the Award are net of amounts that were credited to Hann for payments made on the project or overhead.[81]

75.    Kahkeshani's damage model took into account all of items for which Hann was entitled as a credit.[82]

76.    Kahkeshani's damage model from the beginning took into account all of items for which Hann was entitled as a credit.

> Claimant's damage model was based on the total payments to SKH, less the amounts paid by SKH to subcontractors and suppliers for Claimant's house, less the amount of lien claims that were not required to be paid by Claimant, *[and] less the overhead allocable to Claimant's house*.[83]

**B. Determination of fraudulent misrepresentations and alter ego finding.**

77.    The Award determined that SKH made fraudulent misrepresentations to Kahkeshani.[84]

78.    The Award also determined SKH made misrepresentations to Kahkeshani for which Hann should be held personable liable under the application

---

[81] Award at p.17-18, ¶ 28.

[82] Award at p. 11, first bullet.

[83] Award at p. 11, first bullet (emphasis added).

[84] Award at p. 16, ¶ 25.

of the alter ego doctrine.[85] "The record evidence is sufficient to establish that Stephen Hann should be held personally liable for the misrepresentations of SKH pursuant to a piercing the corporate veil or alter ego theory."[86]

## C. Damages found in the Award.

79.     The $371,972.13 in damages awarded to Kahkeshani in the Award are net of amounts that were credited to Hann for lien payments made on the project, work performed, and overhead.[87]

80.     The Award awards damages in favor of Kahkeshani against Hann individually and SKH, jointly and severally, in the total amount of $371,972.13 plus pre-judgment interest thereon, plus attorneys' fees and expenses in the amount of $200,000.00, plus post-judgment interest, attorneys' fees, and costs thereon as set forth in the Award.[88]

## IV.     RELIEF REQUESTED

81.     Kahkeshani respectfully requests that the Court, based upon the Award, enter judgment against Hann pursuant to 11 U.S.C. §523(a) for the amount of $571,972.13 plus interest as set forth in the Award.[89]

---

[85] Award at p. 17, ¶ 27.

[86] Award at p. 17, ¶ 27.

[87] Award at p.17-18, ¶¶ 28-29.

[88] Award, pp. 17-18, ¶ 28.

[89] Kahkeshani reserves the right to file a motion to dismiss the §727(a) causes of action asserted in the Complaint in Adv. No. 12-03256.

## V.    BASIS OF RELIEF

**A.    Summary of Basis of Relief.**

82.    Kahkeshani is entitled to judgment under §523(a) as a matter of law on at least the following three (3) grounds.

83.    First and foremost, the Award found and concluded that Hann individually was liable under §§162.005(1)(A) and 162.031 of the Trust Fund Statute.  This liability results in a nondischargable claim under §523(a)(4) for fraud or defalcation of fiduciary duty by operation of law.

84.    Additionally and alternatively, pursuant to 11 U.S.C. §523(a)(2), because the Award separately found and concluded that Hann was personally liable for fraudulent misrepresentations made by SKH to Kahkeshani, the damages provided in the Award should be determined to be nondischargable.

85.    Additionally and alternatively, pursuant to 11 U.S.C. §523(a)(6), because of the willful and malicious conduct of Hann, the damages provided in the Award should be determined to be nondischargable.

**B.    Kahkeshani is entitled to summary judgment on the §523(a) claims.**

86.    Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure, and as set forth below, Kahkeshani is entitled to summary judgment for Kahkeshani's claims under §§523(a)(2), (4), and/or (6).

1032582

87.     Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [90]

88.     As discussed in the April 10, 2013 status conference in these adversary proceedings, and as further reflected in the agreed scope of the arbitration,[91] the Court is to apply the factual determinations of the arbitration to the evaluation of whether the damages award to Kahkeshani in the Award are nondischargeable under 11 U.S.C. §523(a).

89.     Summary judgment is the appropriate procedural vehicle for entry of judgment for claims under §§523(a)(2), (4), and/or (6) based upon the findings and results of an arbitration award.[92]

---

[90] Fed. R. Civ. P. 56(a) applicable herein by Fed. R. Bankr. P. 7056.

[91] Award at pp. 1-2, ¶¶ 4-6.

[92] *See In re Willard,* 482 B.R. 344; 352 (Bankr. D. N.M. 2012) ("The Court will grant Plaintiff's Motion, provided that the Arbitrator's findings of fact establish all elements necessary to a finding of nondischargeability of the debt at issue in this adversary proceeding."); *In re Smereczynsky,* 2012 Bankr. LEXIS 6050, at *2-3, 9 (Bankr. N.D. Ga. 2012) (plaintiff sought — and was granted — summary judgment on §523(a) claim following arbitration award); *TC v. Abeyta (In re Abeyta)*, 387 B.R. 846, 851-852 (Bankr. D.N.M. 2008) (summary judgment on a non-dischargeability claim may be granted based on a prior judgment obtained outside of bankruptcy provided that the prior judgment establishes all elements necessary to the determination of non-dischargeability).

1032582

90.     When judgment is sought on the grounds of collateral estoppel, the Court need only determine whether the relevant findings support nondischarge of the debts in question.[93]

## C.     The preclusive effect of the Award for Kahkeshani's claims under §523(a).

91.     Subsequent to the Court ordering arbitration, the parties agreed that the factual findings and conclusions of law would determine whether grounds exist to deny the damages awarded to Kahkeshani in the Award.  Such agreement was affirmed by the parties in the status conference held in these adversary proceedings on April 10, 2013 and in the agreed scope and purpose of the arbitration.[94]  The Award has preclusive effect with respect each of the claims of Kahkeshani asserted under §§523(a)(2), (4), and/or (6).[95]

### 1.  <u>The determinations of the Award are collateral estoppel for Kahkeshani's §523(a) claims.</u>

92.     Both the United States Supreme Court and the Fifth Circuit have upheld that issue preclusion may apply for nondischargeability determinations

---

[93] *See Cardwell v. Gurley (In re Cardwell)*, 487 Fed. App'x 183, 184-185 (5th Cir. 2012) ("The parties concede that collateral estoppel should apply to prevent the re-litigation of the FOFCOL of the state court; they only disagree as to whether those findings support the discharge or the non-dischargeability of the debt.").

[94] Award at pp. 1-2, ¶¶ 4-6.

[95] *See Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir. 1985) (arbitration decision can have res judicata or collateral estoppel effect when proceeding afforded basic elements of adjudicatory procedure).

1032582

where the traditional tests for preclusion are met.[96]  Parties may invoke collateral estoppel in certain circumstances to bar re-litigation of issues relevant to dischargeability, although the bankruptcy court retains jurisdiction to ultimately determine the dischargeability of the debt.[97]

93.    The application of collateral estoppel from arbitral findings is a matter within the broad discretion of the district court.[98]  Informing that discretion are common sense considerations such as whether any special circumstances existed that would render preclusion inappropriate or unfair.[99]  Ambiguous pleadings or the absence of written findings from the arbitration may make preclusion impossible.[100]  No deficiency exists or is alleged with respect to the Award that prevents the Court from giving the Award preclusive effect.[101]

---

[96] *See Crain v. Limbaugh,* 155 B.R. 952, 958 (Bankr. N.D. Tex. 1993), *citing Grogan v. Garner,* 498 U.S. 279, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991); *Recoveredge, L.P. v. Pentecost,* 44 F.3d 1284, 1295 (5th Cir. 1995) (well settled that state judgments for damages and/or equitable relief based on fraud and related causes of action can have collateral estoppel effect in §523(a) proceedings).

[97] *See Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195, 1201 (5th Cir. 1996).

[98] *See Univ. Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991); *see also Milliken v. Grigson*, 986 F. Supp. 426, 431 (S.D. Tex. 1997) ("In Texas, an arbitration award has the same effect as the judgment of a court of last resort. Arbitration awards are favored by the courts to dispose of pending disputes and every reasonable presumption should be indulged to uphold the arbitration proceeding.").

[99] *See Pollock v. Marx (In re Marx)*, 171 B.R. 218, 223 (Bankr. N.D. Tex. 1994).

[100] *See Univ. Am. Barge Corp.*, *supra*, 946 F.2d. at 1137.

[101] Hann never lodged a timely challenge to the Award.  *See* 9 U.S.C. § 12 (three month window to challenge award).

94.     Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case."[102] The test under Texas law is different from the federal common law test for application of collateral estoppel.

95.     In the context of non-dischargeability claims, the federal test for collateral estoppel must also be considered.  The federal test for collateral estoppel requires the party invoking estoppel to establish that (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.[103]  The key difference between the two is the requirement that the issue be identical for federal collateral estoppels,[104] which condition is satisfied by the determination of misuse of trust funds with intent to defraud under Trust Fund Statute §§162.005(1)(A) and 162.031 and the applicability of such determination to 11 U.S.C. §523(a)(4), and the misrepresentation findings of the Award relating to §523(a)(2).

---

[102] *See Pancake v. Reliance Ins. Co. (In re Pancake)*, 1997 U.S. App. LEXIS 12991, at *3 (5th Cir. 1997).

[103] *See RecoverEdge,* supra, 44 F.3d at 1290 (citing *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 114 (5th Cir. 1993)).

[104] *See id.* at 1291.

96.     The failure to present the trial record to the bankruptcy court is not a bar to the application of issue preclusion.[105]  The evidence before the bankruptcy court only need be sufficient to allow the court to determine whether a particular issue was actually litigated.[106]

97.     For purposes of applying issue preclusion in the context of non-dischargeability claims, federal law requires bankruptcy courts to compare the elements of the state law claim to the elements of the §523(a) non-dischargeability claim to determine whether they require proof of the same facts.[107]  In other words, once a party has satisfied the applicable state law test for issue preclusion, bankruptcy courts must apply a "federal test" whereby the bankruptcy court "'examine[s] the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contain[s] sufficiently detailed facts and findings to supply each of the elements of a §523(a) claim.'"[108]

---

[105] *See Davis*, *supra*, 3 F.3d at 115.

[106] *See Arendondo v. Thomas (In re Thomas),* 2005 Bankr. LEXIS 284, at *10 (Bankr. N.D. Tex. Feb. 23, 2005) (record must provide a sufficient basis upon which the bankruptcy court may determine that the issue to be decided was actually litigated and necessarily decided); *Viking Dynamics, Ltd. v. O'Neill (In re O'Neill)*, 260 B.R. 122, 127 (Bankr. E.D. Tex. 2001) (collateral estoppel was appropriate in non-dischargeability claim because Texas law would give preclusive effect to the arbitration award).

[107] *See Horne v. Horne,* 2011 Bankr. LEXIS 451, 13-18 (Bankr. W.D. Tex. Feb. 1, 2011).

[108] *See Marx, surpa,* 171 B.R. at 223.

98.     The arbitration at issue here was regularly and normally conducted in all regards, is free of any real or alleged procedural irregularities, and thus is entitled to full deference by this Court.

    a.    The arbitration in this case was sought by Hann[109] over the opposition of Kahkeshani,[110] who anyway ultimately prevailed at arbitration.  This is not the situation that is often contested in bankruptcy court where the arbitration victor sought enforcement of an arbitration agreement and then returned to court with an award from a proceeding controlled by the victor and where the losing side did not participate or complained of other perceived irregularities.

    b.    Hann participated in and agreed to the selection of the arbitrator.[111]

    c.    Hann actively participated in the arbitration as evidenced by the submissions Hann made before and after the actual arbitration trial.

    d.    Hann presented evidence in the form of witnesses[112] and exhibits at the arbitration trial.

    e.    Hann cross-examined witnesses (or had the opportunity to cross examine witnesses) at the arbitration trial.[113]

99.     The Award in this case is entitled to full deference by this Court. The Award is a nineteen-page, painstakingly detailed document that contains extensive

---

[109] *See* Adv. No. 12-03196, Docket No. 23.

[110] *See* Adv. No. 12-03196, Docket No. 29 (*Emergency Motion for Rehearing Regarding Order Granting Motion to Compel Arbitration and (II) Emergency Status Conference*).

[111] *See* Adv. No. 12-03196, Docket No. 44, Adv. No. 12-03256, Docket No. 35 (letter to court with parties' recommendations for arbitrator.

[112] Award at p. 3, ¶ 9.

[113] Award at p. 3, ¶ 9.

1032582

analysis of the evidence and findings of fact.[114]   The Award also thoroughly evaluates Kahkeshani's claims against Hann and SKH and actually denies some claims (intent to defraud under §162.105(1)(B) and (C), theft, and fraudulent transfer)[115] and gives credit to Hann and SKH for amounts spent on lien payments, work performed, and general overhead.[116]

100.   In addition, as detailed below, the Award evidences that the parties actually litigated and the arbitrator necessarily decided pertinent facts pertinent to §§162.005(1)(A) and 162.061, and the record contains sufficiently detailed facts and findings to supply each of the elements of each of Kahkeshani's claims under §523)(a).[117]

## 2. __Comment *i* of the Restatement (Second) of Judgments does not apply.__

101.   Hann has argued in various pleadings that collateral estoppel does not apply.[118]   Hann suggests that the determinations made in the Award for Kahkeshani's §523(a) claims are insufficient because the Award supposedly presents alternative bases of recovery upon which this Court is precluded from giving preclusive effect under Comment *i* of §27 of the Restatement (Second) of

---

[114] Award, Exhibit 1.

[115] Award at p. 17, ¶ 26.

[116] Award at p.17-18, ¶ 28.

[117] *See Marx, supra,* 171 B.R. at 223.

[118] *See* Adv. No. 12-03256, Docket No. 51.

Judgments[119] as adopted by the Texas Supreme Court in *Eagle Properties, Ltd. v. Scharbauer ("Eagle Properties")*[120] and by the Fifth Circuit in *Schwager v. Fallas (In re Schwager) ("Schwager")*.[121]

102.   The interpretation advanced by Hann is incorrect and/or such interpretation is not applicable to this case.

103.   The Award is not based upon alternative theories of recovery; instead the Award concludes that Hann is liable to Kahkeshani under each of three bases, intentional misuse of trust funds with intent to defraud in violation the Trust Fund Statute, breach of contract, and fraudulent misrepresentation.[122]

104.   The Award describes in extensive detail from pages 1 to 16 how Hann violated the Trust Fund Statute intentionally, knowingly, and with the intent to defraud.

105.   The quantum of damages is the same under each basis of liability in the Award simply because a net amount of misused trust funds plus attorneys' fees was awarded by the Arbitrator, and naturally, Kahkeshani is entitled to only one

---

[119] "i.  Alternative determinations by court of first instance.  If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."  Restat. 2d of Judgments, §27 (1982).

[120] *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721-722 (Tex. 1990).

[121] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 183 (5th Cir. 1997).

[122] Award at p. 18, ¶ 30 ("Claimant's damages proximately caused by SKH's breach of contract and fraudulent misrepresentations are the same damages ($371,972.13) Claimant sustained as a result of Respondents' violation of the Trust Fund Statute.").

1032582

recovery.  The result of misuse of trust funds in violation of the Trust Fund Statute stands on its own independent of any other recovery granted (or denied) in the Award.

106.   By contrast, the Fifth Circuit in *Schwager* found that collateral estoppel did not apply because liability at the trial court level was based upon *disjunctive* questions — the single question posed to the jury of whether damages arose for "either breach of fiduciary duty **_or_** breach of the partnership agreement."[123]   No mystery exists here from the Award as to the legal or factual bases of liability of Hann, beginning with the extensive detail provided dint he Award as to liability under the Trust Fund Statute.

107.   More to the point, the rationale for Comment *i* does not apply to this case.

108.   The rationale in Comment *i* against collateral estoppel approved by the Texas Supreme Court is that

> "a determination in the alternative may not have been as rigorously considered as it would have been if necessary to the result, and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld."[124]

---

[123] (Emphasis added.) "The limited partners seek to use one issue in the judgment, the breach of fiduciary duty, standing alone. However, the jury was asked in a single question to award damages for either breach of fiduciary duty or breach of the partnership agreement." *Schwager, supra,* 121 F.3d at 183.

[124] *Eagle Properties, supra,* 807 S.W.2d at 722, citing Restatement (Second) of Judgments §27, comment (i) (1982) (emphasis supplied).

109.   The concerns of Comment *i* are not present in and are completely inapplicable, as here, to an adverse determination in an arbitration award *for which there is no appellate remedy* — **arbitration is the court of last resort**.[125] Kahkeshani seeks to use the Award as collateral estoppel against Hann, but it is Hann who demanded arbitration over the jury trial that was sought by Kahkeshani,[126]  Hann intentionally abandoned any appellate remedy by demanding arbitration.  Hann lost at arbitration and never challenged the validity of the Award.

110.   The further concern in Comment *i* and discussed in *Eagle Properties* was whether the prior court had "rigorously considered" the claims in question. Here there is no question that the arbitrator as demonstrated in the Award "rigorously considered" liability under §§162.005(1)(A) and 162.031 of the the Trust Fund Statute, devoting 16 pages of the Award to the analysis.[127]  Having been commenced in the middle of this litigation, the arbitration was tried specifically with the §523(a) determinations squarely in mind.

---

[125] *Milliken, supra,* 986 F. Supp. at 431 ("In Texas, an arbitration award has the same effect as the judgment of a court of last resort.").

[126] *See* Adv. No. 12-03256, Docket No. 5 (jury demand by Kahkeshani).

[127] Award at pp. 1-16.

111.   The relative importance of the potential for appellate review in Comment *i* is further demonstrated in Comment *o*, which provides in pertinent part the following.

> If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. In contrast to the case discussed in Comment *i*, the losing party has here obtained an appellate decision on the issue, and thus the balance weighs in favor of preclusion.[128]

112.   The Award here in these procedural circumstances is as conclusive as any appellate determination as to the basis of liability and damages. Arbitration by its very nature eliminated appellate review.

113.   Hann missed the deadline to challenge the substance of the Award[129] and still has never challenge the validity of the Award. Hann's frequent pleadings seek only to litigate again what was decided conclusively against Hann in the arbitration. The Court should not permit Hann to now proceed to a second- or third-chance determination of the elements of §§162.005(1)(A) and 162.031of the Trust Fund Statute and other aspects of the Award.

---

[128] Restat 2d of Judgments, §27 (1982).

[129] *See* 9 U.S.C. § 12 (three month deadline to challenge award).

**D.    The Award requires entry of judgment against Hann pursuant to 11 U.S.C. §523(a).**

114.    The Award provides the basis for the entry of a judgment against Hann that the Award is nondischargeable pursuant to 11 U.S.C. §523(a)(4) for fraud or defalcation while acting in a fiduciary capacity because of Hann's violations of §§162.005(1)(A) and 162.031 of the Trust Fund Statute.

115.    Additionally and alternatively, Kahkeshani is entitled to entry of a judgment against Hann that the Award is nondischargeable pursuant to §523(a)(2) for fraud, false representations, and/or false pretenses, and/or under §523(a)(6) for willful and malicious injury.

116.    It is the burden of Kahkeshani to demonstrate that the amounts provided in the Award fall within one of the discharge exceptions of §523(a).[130] As demonstrated below, the Award indicates that the application of collateral estoppel is appropriate to the elements of each of §§523(a)(2), (4), and/or (6). Kahkeshani has satisfied this burden by and through the findings and conclusions of the Award.

---

[130] *See Nicholas, supra,* 956 F.2d at 114; *Connelly v. Michael*, 424 F.2d 387, 389 (5th Cir. 1970).

1032582

1.   **Hann's discharge should be denied under §523(a)(4) for defalcation of fiduciary duty.**

117.   The Award demonstrates direct and individual separate, and direct liability of Hann as a trustee and fiduciary under §§162.005(1)(A) and 162.061 of the Trust Fund Statute and thus under §523(a)(4).

a.   ***Hann is liable to Kahkeshani under the Trust Fund Statute.***

118.   Texas statutory law provides the basis of the fiduciary duty owed by Hann to Kahkeshani.

119.   Under long-standing Fifth Circuit precedent, nondischargeable liability is imposed under §523(a)(4) for breach of fiduciary duty to the extent that a debtor's conduct is found to be wrongful under the Trust Fund Statute.[131]

120.   The Trust Fund Statute, Chapter 162 of the Texas Property Code, provides, *inter alia,* the following provisions that are applicable to this action (emphasis added).

> Sec. 162.001.   CONSTRUCTION PAYMENTS AND LOAN RECEIPTS AS TRUST FUNDS.   (a)   **Construction payments are trust funds** under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.
>
> ***
>
> Sec. 162.002.   CONTRACTORS AS TRUSTEES.   A contractor, subcontractor, **or owner or an officer,**

---

[131] *See Boyle, supra,* 819 F.2d at 592; *Nicholas, supra,* 956 F.2d at 114.

**director, or agent of a contractor,** subcontractor, or owner, **who receives trust funds or who has control or direction of trust funds, is a trustee** of the trust funds.

Sec. 162.003.   BENEFICIARIES OF TRUST FUNDS.   (a) An   artisan,   laborer,   mechanic,   contractor, subcontractor,   or   materialman   who   labors   or   who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

**(b)   A property owner is a beneficiary of trust funds described by Section 162.001 in connection with a residential construction contract, including funds deposited into a construction account described by Section 162.006.**

Sec. 162.005.   DEFINITIONS.   In this chapter:

**(1)   A trustee acts with "intent to defraud" when the trustee:**

**(A)   retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds;**

* * *

Sec.   162.031.   MISAPPLICATION   OF   TRUST   FUNDS. (a)   A trustee who, **intentionally or knowingly or with intent to defraud**, directly or indirectly retains, uses,   disburses,   or   otherwise   diverts   trust   funds without   first   fully   paying   all   current   or   past   due obligations   incurred   by   the   trustee   to   the beneficiaries   of   the   trust   funds,   has   misapplied   the trust funds.

***

Sec.   162.032.   PENALTIES.   (a)   A   trustee   who misapplies   trust   funds   amounting   to   $500   or   more   in

34

violation   of   this   chapter   commits   a   Class   A
misdemeanor.

     (b)   A   trustee   who   misapplies   trust   funds
amounting   to   $500   or   more   in   violation   of   this
chapter,   with   intent   to   defraud,   commits   a   felony   of
the   third   degree.

     (c)   A   trustee   who   fails   to   establish   or   maintain
a   construction   account   in   violation   of   Section   162.006
or   fails   to   establish   or   maintain   an   account   record
for   the   construction   account   in   violation   of   Section
162.007   commits   a   Class   A   misdemeanor.

121.  As set forth in the Award, and as detailed in Section III ("Substance of the Award") of this Motion, the present situation fits squarely and easily within the liability imposed by §162.031.

    a. Kahkeshani was the beneficiary of trust funds.

    b. Hann was the trustee.

    c. Hann used the trust funds for the payments of personal expenses, past debts of HBL, and the debts of SKH unrelated to the Kahkeshani project.

    d. Hann misapplied the trust finds intentionally, knowingly, and with intent to defraud.

    e. Intent to defraud was present because Hann retained, used, disbursed, and diverted trust funds with the intent to deprive Kahkeshani of the trust funds.

    f. The damages provided in the Award are net of the safe harbors and creditors to which Hann was entitled.

1032582

### b. Kahkeshani's damages are nondischargeable under the Fifth Circuit's application of §523(a)(4) to the Trust Fund Statute.

122.   Hann is liable under §523(a)(4) for the misuse of trust funds that occurred intentionally, knowingly, and with the intent to defraud as determined in the Award.

123.   Section 523(a)(4) provides that a debt may be declared non-dischargeable if it arose by reason of the debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[132]  This action focuses on fraud or defalcation (and specifically defalcation) while acting in a fiduciary capacity, which are separate and distinct from embezzlement or larceny.

124.   Under §523(a)(4), non-dischargeability of a debt because of fraud or defalcation by the debtor requires a showing that (1) the debtor was a fiduciary, and (2) the debt arose through fraud or defalcation of the duty.[133]

125.   Federal law determines what constitutes a fiduciary duty for the purposes of §523(a)(4).[134]  Not all relationships defined under state law as "fiduciary" are necessarily of the type for which a nondischargeability action will stand under federal bankruptcy law.[135]

---

[132] 11 U.S.C. § 523(a)(4).

[133] *See Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998); *In re Chavez*, 140 B.R. 413, 422 (Bankr. W.D. Tex. 1992).

[134] *Id.*

[135] *See In re Angelle,* 610 F.2d 1335, 1341 (5th Cir. 1980)

1032582

126.   In order for a fiduciary relationship to exist for the purposes of §523(a)(4) there must be an express or technical trust relationship; a constructive trust relationship is insufficient to support the proposition that someone is a fiduciary for the purposes of 523(a)(4).[136]   The court must look to applicable, typically state, law to determine whether a trust relationship exists.[137]

127.   The technical or express trust requirement is not limited to trusts that arise by virtue of a formal trust agreement; it also includes relationships in which a trust-type relationship is imposed by common law or statute.[138]

128.   Once a valid fiduciary relationship has been established, a debt may be excepted from a debtor's discharge under §523(a)(4) because it was incurred through fraud or defalcation.

129.   Defalcation under §523(a)(4) is defined as "a willful neglect of duty, even if not accompanied by fraud or embezzlement."[139]   "Defalcation includes the failure to produce funds entrusted to a fiduciary, even where such conduct does not reach the level of fraud.[140]"

---

[136] *See id.*

[137] *Bennett v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993).

[138] *See id.*

[139] *See Schwager, supra,* 121 F.3d at 184   (quoting *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 422 (5th Cir. 1990)).

[140] *In re Swor,* 347 Fed.Appx. 113, 116 (5th Cir. 2009).

1032582

130.   "Fraud" for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud.[141]

131.   The Fifth Circuit has established a rubric for evaluating the nondischargeability of debts under §523(a)(4) that involve a trustee's misuse of construction trust funds under the Trust Fund Statute.

132.   In *In re Matter of Boyle*, the Fifth Circuit concluded that, under a prior version of §162.031, that the only actual fiduciary duties within the meaning of §523(a)(4) imposed by the Trust Fund Statute was a single restriction: the fund holder may not, "with intent to defraud," use such funds for other purposes without first fully paying all obligations to the named classes of claimants.[142]

133.   *Boyle* determined that §523(a)(4) contains a scienter requirement, explaining that:

> The plain language of the statute and limited evidence of congressional intent indicate that the pertinent debt discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's.[143]

---

[141] 4-523 Collier on Bankruptcy ¶ 523.10 (16th Ed. 2014) *citing In re Tripp*, 189 B.R. 29 (Bankr. N.D.N.Y. 1995); *In re McDaniel*, 181 B.R. 883 (Bankr. S.D. Tex. 1994).

[142] *See Boyle, supra*, 819 F.2 at 592.

[143] *Boyle*, 819 F.2at 587-88; *accord Bullock v. Bankchampaign, N.A.,* 133 S. Ct. 1754, 1759-60 (2013).  The fact that the Fifth Circuit analysis of §523(a)(4) included a scienter requirement is further demonstrated by the omission of any reference to *Bullock* in the most recent opinion of the Fifth Circuit to address the Trust Fund Statute and §523(a)(4) omits any reference to *Bullock*. *See Pledger, supra,* 592 Fed. Appx. 296 at 302.

134.   In *In re Matter of Nicholas*, the Fifth Circuit recognized that the scope of fiduciary liability under the Trust Fund Statute that is actionable under §523(a)(4) had expanded with the 1987 amendments to §162.031, that added "intentionally or knowingly" to "intent to deceive."[144]

135.   *In re Swor* affirmed and applied the basic test of *Nicholas*.

136.   Earlier this year, *In the Matter of Pledger* the Fifth Circuit in an unpublished opinion stated the factual determination necessary under the *Boyle-Nicholas* rubric for §523(a)(4) defalcation of fiduciary duty. [145]

> [U]nder *Nicholas*, a creditor claiming Section 523(a)(4) nondischargeability through the Texas Construction Trust Fund Statute must show that (1) the contractor intentionally, knowingly, or with intent to defraud diverted trust funds and (2) the affirmative defenses in the statute do not apply. To disprove the affirmative defense in this case, Ratliff had to establish that the payments made by Pledger were not "actual expenses directly related to the construction." Specifically, Ratliff must show that (a) these were not payments made on the project or overhead, or (b) they were made for Pledger's own uses rather than to benefit the health of his failing business.). [146]

137.   The Court here fulfills its obligations to the debtor by ensuring that the necessary findings and conclusions of liability under state law (i.e. the Trust

---

[144] *Nicholas, supra*, 956 F.2d at 112, 114.

[145] *See id.* at 302.

[146] *See Pledger, supra,* 592 Fed. Appx. at 302.

1032582

Fund Statute) occurred in the arbitration that correspond with the federal law "scope of the concept of fiduciary" liability.[147]

138.    The    Award    here    demonstrates    the    direct    and    individual nondischargeable liability of Hann pursuant to §§162.005(1)(A) and 162.031 and §523(a)(4) for defalcation while acting in a fiduciary capacity.

a.    Kahkeshani as the owner of the residential property[148] was a beneficiary of the trust funds.[149]

b.    Hann was a trustee of the funds paid by Kahkeshani to SKH.[150]

c.    Hann misapplied the trust funds by internationally, knowingly, and with intent to defraud because Hann directly used, disbursed, or otherwise diverted trust funds for (*i*) his own personal expenses and benefit,[151] (*ii*) for the payments of the debts of Hann Builders, Ltd. ("HBL") (another company solely owned and controlled by Hann), and (*iii*) for debts of SKH unrelated to the Kahkeshani project.[152]

d.    Hann's conduct fell within the *"intent to defraud"* rubric under the Trust Fund Statute[153] because Hann misused the trust funds with the intent to deprive Kahkeshani of the trust funds.[154]

---

[147] *See Boyle, supra,* 819 F.2d at 592.

[148] Award at p. 3, ¶ 10, first bullet.

[149] *See* Tex. Prop. Code. §162.003(b) (owner of residence is beneficiary).

[150] Award at p. 15, ¶ 20; *see also*, Tex. Prop. Code. §162.002 (owner, officer or director of contractor is a trustee of construction trust funds).

[151] Award at p.12, ¶¶ 13-14; p. 13, ¶ 15, p. 14, ¶ 19.*see also,* Tex. Prop. Code §162.031(a) ("A trustee who, intentionally or knowingly *or with intent to defraud*, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.).  §162.031 describes intentional, knowing, or with intent to defraud in the disjunctive whereas the Award determines that Hann's conduct fulfilled each of the three categories.

[152] Award at pp. 15-16, ¶ 22.

[153] Tex. Prop. Code §162.005(1).

1032582

     e.     The damages awarded in the Award are net of, and Hann was given credit for, overhead expenses, liens paid by Hann, and the value of work performed.[155]

139.   The Award further analyzes and demonstrates that none of the spending for which Hann was determinate to be liable fell within any of the safe harbors or affirmative defenses of the Trust Fund Statute.[156]

140.   The Award demonstrates that (a) Hann's misused payments were not made on the project or overhead, or (b) they were made for Hann's own uses rather than to benefit the health of his failing business.[157]

141.   In fact, even though the Award was decided before the additional hurdle provided by *Pledger*, the Award provides Hann with credit for overhead expenses,[158] payments to discharge liens, and value of work performed on the house for which Claimant was not required to pay. [159]

---

[154] Award at p. 15, ¶ 21; *see also,* Tex. Prop. Code §162.005(1)(A) ("A trustee acts with "intent to defraud" when the trustee: (A)  retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds"

[155] Award at p. 17-18, ¶ 28-29; *see also Pledger, supra,* 592 Fed. Appx. at 302.

[156] *See id.*

[157]  *See id.*

[158] Award at pp.17-18, ¶ 28.

[159] Award at p. 18, ¶ 29.

1032582

### *c.   The results of Boyle and its progeny are distinguishable from this case.*

142.   It is also important to note that the results of *Boyle, Nicholas, Swor,* and *Pledger* are distinguishable from the Award and the judgment for nondischargeability that Kahkeshani is entitled to receive in this case.

143.   In *Boyle*, the creditor lost the nondischargeability action because the creditor put on no evidence of the basis for any theory of fiduciary defalcation.[160] The *Boyle* panel noted that "[t]here was no finding, and indeed no evidence, that Boyle or either of his corporations acted fraudulently, or that there were any agreements with Abilene Lumber, the Bank, or the homeowner which either required segregation of the funds, or otherwise by force of their own terms, and apart from the Texas statute, made Boyle or his companies fiduciaries of the funds."[161]

144.   The Award here in contrast to *Boyle* reflects that Kahkeshani put on abundant evidence to prove that Hann was a fiduciary who misused trust funds intentionally, knowingly, and with the intent to deprive Kahkeshani of the trust funds, which issue(s) the arbitrator had no difficulty determining against Hann.[162] Under *Boyle*, therefore, the wrongful conduct of Hann as measured by §162.031

---

[160] *See Boyle, supra,* 819 F.2d at 592-93.

[161] *See Boyle, supra,* 819 F.2d at 585.

[162] Award, ¶¶ 1-21.

1032582

created the fiduciary duty that that was breached within the meaning of §523(a)(4) defalcation.

145.   In *Nicholas*, the creditor did not succeed because the bankruptcy court found that all of the trust payments made to the debtor went into the debtor's business,[163] and that the gap in receipts by the debtor's company on the construction projects and the debtor's payments to contractors was insufficient to take the debtor out of the safe harbors in the Trust Fund Statute.[164]   The Award, by contrast, determines the amount of dollars misused and the amount of the safe harbor dollars that reduced the liability of Hann.[165]

146.   In *Swor*, the question was whether "the funds with which the Swors paid themselves were trust funds." The creditor did not succeed in *Swor* because the creditor did not meet its burden to show that trust funds were misused by showing that payments made to the debtors personally from a comingled account derived from trust funds.[166]   Upon examination of the record in *Swor*, "[n]either the bankruptcy court nor the district court made any factual findings on this point."[167]

---

[163] *See Nicholas, supra,* 956 F.2d at 113.

[164] *See id.* at 113-14.

[165] Award at pp. 17-18, ¶28-29.

[166] *See Swor, supra,* 347 Fed. App. at 117.   The Fifth Circuit remanded the case to the bankruptcy court to determine whether the debtors paid themselves out of trust funds.  *Id.*

[167] *See id.* at 116.

1032582

147.    By contrast, the Award here specifically identifies the facts and evidence that give rise to the duty and breach of the duty by Hann.  The Award provides enormous detail regarding the misuse of funds[168] including at least a full page of examples.[169]

148.    The result in *Pledger* is readily distinguishable because the Award here are net of, and Hann was given credit for, overhead expenses, liens paid by Hann, and the value of work performed.[170]

### d.  Texas bankruptcy courts have entered §523(a)(4) judgment in similar cases.

149.    Bankruptcy courts in Texas have denied discharge pursuant to §523(a)(4) in situations identical or very similar to those confronting Hann.  In *T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber)*, a 2008 decision subsequent to *Boyle* and *Nicholas*, the district court addressed a case with questions identical to the questions in this action, and determined that the liability which resulted from the Debtor's violations of the Trust Fund Statute was nondischargeable under §523(a)(4).[171]  The plaintiff in *Schreiber* proved by a preponderance of evidence that the debtor misapplied the trust funds in question by

---

[168] Award at pp. 1-16.

[169] Award at p. 14.

[170] Award at p. 17-18, ¶ 28-29; *Pledger, supra,* 592 Fed. Appx. 296 at 302.

[171] *T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber),* 2008 U.S. Dist. LEXIS 89438, 36-49, 2008 WL 4831380 (S.D. Tex. Nov. 3, 2008),

1032582

intentionally or knowingly or with intent to defraud by directly or indirectly retaining, using, disbursing, or otherwise diverting the trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds.[172]   The *Schreiber* court then held that the creditor-plaintiff had met its burden of proving by a preponderance of the evidence that the owner misapplied the funds and therefore his debt to the creditor was not dischargeable under §523(a)(4).[173]

150.   Likewise, in *Vulcan Construction Materials, LP v. Kibel (In re Kibel)*, the court held that the debtor violated §162.031 of the Texas Property Code by using construction trust funds received from owners or general contractors to pay his own personal expenses without first paying the subcontractors and materialmen who had furnished the materials.[174]   "This conduct, in turn, satisfies the mental culpability element of §523(a)(4)."[175]

### e.  Kahkeshani is entitled to judgment under §523(a)(4).

151.   Hann misused trust funds intentionally, knowingly. and with intent to defraud within the *Boyle-Nicholas* framework established in the Fifth Circuit.

---

[172] *See id.* at *11-14 (citations omitted).

[173] *See id.* at *15.

[174] *Vulcan Construction Materials, LP v. Kibel (In re Kibel),* 2011 Bankr. LEXIS 1042, at *27 (Bankr. W.D. Tex. 2011).

[175] *Id.*

1032582

152.   The liability for Hann for violations of the Trust Fund Statute is direct and individual because of Hann's role as a trustee, and such liability is discreet and independent from the liability of SKH for fraudulent misrepresentations and the resulting alter ego liability of Hann.

153.   Hann's request in various pleadings seeking a further inquiry into the uses of Hann's personal funds that were deposited into the trust accounts, is contrary to the procedural framework agreed to in this action for arbitration and also constitutes an out-of-time attack against the Award that is prohibited by operation of 9 U.S.C. §12.   Hann had his chance to persuade the arbitrator as to the evidence and methodology to be used under §162.031, Hann was provided with credits for overhead, liens paid, and work performed, and the process in the arbitration reflected in the findings and conclusions of the Award is consistent with the requirements of *Boyle* and its progeny.   The Court should not now give Hann a chance to litigate again the questions that were decided in favor of Kahkeshani in the arbitration.

154.   Accordingly, because of the degree of detail and conclusiveness of the Award, Kahkeshani requests that the Court enter judgment against Hann under §523(a)(4) for defalcation of fiduciary duty.

1032582

2. **Hann's discharge should be denied under §523(a)(2) for fraud or false misrepresentations / false pretenses.**

155.   Additionally and alternatively, the findings and conclusions of the Award demonstrate Hann's liability under §523(a)(2)(A) for false pretenses, false representation, or actual fraud.

156.   The Award determined that SKH made fraudulent misrepresentations to Kahkeshani.[176]

157.   The Award also determined SKH made misrepresentations to Kahkeshani for which Hann should be held personable liable under the application of the alter ego doctrine.[177] "The record evidence is sufficient to establish that Stephen Hann should be held personally liable for the misrepresentations of SKH pursuant to a piercing the corporate veil or alter ego theory."

*a.  §523(a)(2)(A) actual fraud.*

158.   The requirements for denying discharge of a debt for actual fraud pursuant to §523(a)(2)(A) are: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the

---

[176] Award at pp. 16-17, ¶ 25.

[177] Award at p. 17, ¶ 27.

creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations."[178]

159.   The Fifth Circuit does not require that a creditor have reasonably relied on the representations of the debtor in order to prove non-dischargeability under §523(a)(2)(A).[179] All that is required in the Fifth Circuit is *actual* reliance.[180]

160.   Regarding the intent requirement under §523(a)(2)(A), the Fifth Circuit has reiterated that "[a] creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under [] §523(a)(2)(A)."[181]   In other words, actual fraud, as opposed to constructive fraud, is necessary.

161.   The Fifth Circuit has further articulated that §523(a)(2)(A) excepts from discharge "debts obtained by frauds involving 'moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'"[182] The intent to deceive "may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant

---

[178] *Recoveredge*, 44 F.3d at 1293 (*quoting Bank of La. v. Bercier (In re Bercier)*)), 934 F.2d 689, 692 (5th Cir. 1991) (internal footnote omitted)).

[179] *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).

[180] *Int'l Beauty Prods., LLC v. Beveridge (In re Beveridge)*, 416 B.R. 552, 569-570 (Bankr. N.D. Tex. 2009) (emphasis added*); see also Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (also stating the requirements for denying discharge of a debt for actual fraud pursuant to §523(a)(2)(A)).

[181] *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007).

[182] *In re Acosta*, *supra,* 406 F.3d at 372 (*citing In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)).

misrepresentation.'"[183]   "Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive... Thus, a 'dumb but honest' defendant does not have scienter."[184]

162.   In *Sanders v. Muhs* (*In re Muhs*), the court found a debt nondischargeable under §523(a)(2)(A) for fraud under circumstances very similar to the circumstances of this action.[185]   With respect to §523(a)(2)(A) fraud, the *Sanders* court stated:

> When Sanders loaned the $176,000.00 to Muhs in December 2008, Sanders intended to ensure that the Parrot Eyes project would be promptly completed. He was unaware that Muhs had overstated the expense amounts on the draw requests and that any cash shortage was the result of Muhs' diversion of funds out of the Parrot Eyes project and to a direct competitor that was owned by Muhs and/or Muhs' wife. Muhs represented to Sanders that Muhs needed cash because some of D&M Building's other projects were not paying. Sanders was unaware that Muhs was transferring funds to his own competing restaurant, Gabriella's. Had Sanders been aware of the overstated expenses and the diversions, he would not have made the loans.

> Sanders actually and justifiably relied on the representations on the draw requests. However, the draw requests contained numerous charges that were inaccurate. At the time of the loan, Sanders had already paid over $2 million on the basis of the draw requests. If Sanders had known that many of the expenses were overstated, he would not have loaned additional money to Muhs, especially not for the purpose of making up a deficiency created by Muhs' diversion of funds.

---

[183] *See id., citing In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995) (reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent to deceive).

[184] *See id.*

[185] *Sanders v. Muhs (In re Muhs)*, 2011 Bankr. LEXIS 3032, 13-21, 2011 WL 3421546 (Bankr. S.D. Tex. Aug. 2, 2011),

1032582

Sanders' reliance was justifiable. Although he could have examined the expenses more carefully, he was not unjustified in assuming that the draw requests were accurate….

Sanders also actually and justifiably relied on Muhs' representations that the reason for the shortage was that Muhs' other projects were not paying. Muhs' explanation was plausible, and Sanders' acceptance of the explanation was justifiable. If Sanders had known that Muhs was making major cash transfers— one in the amount of $176,000, the same amount as Sanders' loan—to Gabriella's, a competing restaurant owned by Muhs and/or Muhs' wife, Sanders would not have advanced money to Muhs....

Muhs made the misrepresentations regarding the earlier expenses and the reason for the shortage in cash with the intent to deceive Sanders. The earlier misrepresentations on the draw requests and diversion of funds are evidence that Muhs was behaving dishonestly toward Sanders. He was short on funds because of his pattern of diverting funds from Sanders' project. In order to obtain the loan and cover up the earlier deceptions, Sanders made more false representations.

Because of his reliance on Muhs' intentional misrepresentations, Sanders suffered the loss of the amount owed on the Note and the legal fees involved in bringing this case. The elements of §523(a)(2)(A) are satisfied, and Muhs' debt to Sanders is nondischargeable.[186]

163.   The liability of Hann as set forth in the Award should be deemed non-dischargeable under §523(a)(2)(A) for actual fraud. The Award found that each of the elements of actual fraud had occurred.[187]

> a. SKH and/or Hann made representations[188] that SKH and/or Hann knew were false at the time made as evidenced by, *inter alia*, the poor financial condition of SKH at the time of the draw requests and use of funds paid by Kahkeshani for the debts of HBL[189] and other personal obligations of Hann, and that Hann made all decisions as to who would be paid.[190]

---

[186] *Muhs*, supra, 2011 Bankr. LEXIS 3032, at *13-21.

[187] See *Beveridge,* supra 416 B.R. at 570; *see Acosta, supra,* 406 F.3d at 372.

[188] Award at p. 5, first bullet.

[189] Award at p. 10, fifth bullet, and p. 11, ¶ 11.

[190] Award at pp. 5-7.

b.  SKH and/or Hann made the representations with the intent[191] to defraud Kahkeshani.[192]

c.  Kahkeshani actually relied on the representations, as evidenced by the payments made by Kahkeshani to SKH, and Kahkeshani sustained losses as a proximate result of the representations.

d.  Kahkeshani's reliance upon the representations of Hann and/or SKH was actual and justifiable.

e.  As found in the Award, Kahkeshani suffered damages in the amount of $571,972.13 due to the actions of SKH, and Hann is individually liable for such damages.[193]

164.  Accordingly, the Court should enter judgment that all of the amounts awarded in the Award, plus interest, are nondischargeable as to Hann pursuant to §523(a)(2) for actual fraud.

**b.  *§523(a)(2)(A): False Pretenses and False Representations.***

165.  Additionally and alternatively, the findings and conclusions of the Award also demonstrate Hann's liability under §523(a)(2)(A) for false representations and/or false pretenses.

166.  Although the general purpose of the Bankruptcy Code is to provide debtors with a fresh start, §523(a)(2)(A) is designed to protect the victims of fraud.[194]   Section 523(a)(2)(A) provides that debts incurred through "false

---

[191] *See Winn v. Holdaway (In re Holdaway),* 388 B.R. 767 (Bankr. S.D. Tex. 2008) (fraudulent intent may be inferred).

[192] Award at pp. 7-8

[193] Award at p. 17, ¶ 27.

[194] *Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663 (Bankr. N.D. Tex. 2011) (*citing In re Quinlivan*, 434 F.3d 314, 319 (5th Cir. 2005)).

1032582

pretenses, a false representation, or actual fraud" are subject to exception from a debtor's discharge. In order for a debt to fall within §523(a)(2)(A) the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong."[195] Fraudulent acts which are implied in law and may exist in the absence of bad faith are insufficient to deny discharge.[196]

167.   The Fifth Circuit has distinguished between the elements of a claim seeking denial of discharge for (1) false pretenses and representations and (2) actual fraud.[197]

168.   In order for a court to deny discharge of a debt under §523(a)(2)(A) on the basis that the debt is attributable to the debtor's false pretenses or false representations, the plaintiff must prove the debtor's representations were "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party."[198] Courts have consistently found that a debtor's silence regarding a material fact equates to a material representation

---

[195] *Vizzini v. Vizzini (In re Vizzini)*, 348 B.R. 339, 343 (Bankr. E.D. La. 2005), *aff'd,* 234 Fed. App'x 234 (5th Cir. 2007) (*quoting In re Chavez*, supra, 140 B.R. at 419).

[196] *See id.*

[197] *Recoveredge*, *supra,* 44 F.3d at 1292.

[198] *In re Allison*, supra 960 F.2d at 483, later cited in *Recoveredge*, *supra,* 44 F.3d at 1292.

1032582

sufficient to support a denial of discharge.[199] It is also necessary that the other party relied on the representation. In *Field v. Mans*,[200] the Supreme Court settled a conflict among the courts of appeals about the level of reliance that must be demonstrated for a false representation to be nondischargeable.[201]  The Court held that the other party's reliance on the false representation must be *"justifiable"* under the circumstances. The inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made. This is a less exacting standard than "reasonable" reliance, which would focus on whether reliance would have been reasonable to the hypothetical average person.[202]

169.   It is not necessary that the false pretense or representation be made in writing for the debt to be excepted from discharge.[203]  If the property or services

---

[199] *See, e.g., Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987); *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001); *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 2003 U.S. Dist. LEXIS 23450, *52-53 (E.D. La. Dec. 30, 2003); *Hughes v. Wells (In re Wells)*, 2006 Bankr. LEXIS 330, *54 (Bankr. N.D. Tex. Mar. 8, 2006).

[200] *Field v. Mans,* 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351, 33 C.B.C.2d 1323 (1995).

[201] *Compare Mayer v. Spanel Int'l (In re Mayer)*, 51 F.3d 670 (7th Cir. 1995) , and *In re Allison*, 960 F.2d 481 (5th Cir. 1992) (a creditor need not prove reliance was reasonable), and *Thul v. Ophaug (In re Ophaug),* 827 F.2d 340 (8th Cir. 1987), with *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134 (1st Cir. 1992) and *First Bank of Colo. Springs v. Mullet (In re Mullet)*, 817 F.2d 677 (10th Cir. 1987) (reliance on false representation must have been reasonable under the circumstances).

[202] 4 Collier on Bankruptcy ¶ 523.08 (16th Ed. 2014)

[203] *See AT&T Universal Card Servs. Corp. v. Bonnifield (In re Bonnifield),* 154 B.R. 743 (Bankr. N.D. Cal. 1993) ; *see also Talcott v. Friend*, 179 F. 676 (7th Cir. 1909) , *aff'd*, 228 U.S. 27, 33 S. Ct. 505, 57 L. Ed. 718 (1913) .

1032582

were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability. [204]

170.   The damages provided in the Award and for which Hann is individually liable also are subject to nondischargeability for false pretenses or representations.

    a.   SKH represented falsely to Kahkeshani in each draw request that the funds to be paid by Kahkeshani would be used to pay for the work listed in each such draw request; however, Hann and SKH did not intend to use the funds that were the subject of each draw request to pay the items listed therein.[205]

    b.   SKH also was silent as the true intentions of SKH and/or Hann as to the use of the funds paid to SKH by Kahkeshani.

    c.   Kahkeshani relied on the false representations of SKH as evidenced by the payments that Kahkeshani made to SKH for the amounts requested in each draw request.

    d.   The representations of Hann and SKH pertained to past and current facts, specifically, the draw requests represented what materials or labor would be paid by the funds advanced by Kahkeshani.[206]

    e.   Kahkeshani's reliance upon the representations of Hann and/or SKH was justifiable.[207]

---

[204] *ITT Fin. Servs. v. Hulbert (In re Hulbert)*, 150 B.R. 169 (Bankr. S.D. Tex. 1993); *Barch v. Cokkinias (In re Cokkinias)*, 28 B.R. 304 (Bankr. D. Mass. 1983); *Ruegsegger v. McCarley*, 262 Or. 157, 496 P.2d 214 (Or. 1972).

[205] Award at p. 16, ¶ 25.

[206] Award at p. 16, ¶ 25.

[207] *See Field v. Mans,* supra, 516 U.S. at 70, 74-75 ("§523(a)(2)(A) requires justifiable, but not reasonable, reliance" and noting that "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'") (quoting Restatement (2d) of Torts (1976) §540)).

1032582

171.   Hann is liable individually to Kahkeshani for the damages caused by the false pretenses and false representations of SKH pursuant to piercing of the corporate veil of SKH and/or under the conclusion that SKH was the alter ego of Hann.[208]

172.   Accordingly, the Court should enter judgment that all of the amounts awarded in the Award, plus interest, are nondischargeable as to Hann pursuant to §523(a)(2) for false representations and/or false pretenses.

### 3.   *Hann's discharge should be denied §523(a)(6): willful and malicious injury.*

173.   The individual and direct liability of Hann under the Trust Fund Statute and the alter ego liability for the fraudulent misrepresentations of SKH both also fall within the boundaries of nondischargeability under §523(a)(6).

174.   Section 523(a)(6) provides for denial of the discharge of debts arising through "willful and malicious injury by the debtor to another entity or to the property of another entity."  In order for conduct to qualify as willful and malicious the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm."[209]  Injuries that are negligently or recklessly inflicted are insufficient to meet the requirements of §523(a)(6).[210]  Injuries

---

[208] Award at p. 17, ¶ 27.

[209] *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003) (*quoting Miller*, supra, 156 F.3d at 606).

[210] *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

1032582

covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6).[211]  Willful conversion of another's property falls within §523(a)(6).[212]

175.   The word "willful" . . . modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead, "willful acts that cause injury."[213]

176.   Additionally the Fifth Circuit has noted that an injury is willful if there either an objective substantial certainty of harm or a subjective motive to cause harm.[214]  An act is malicious if as an act done with the actual intent to cause injury.[215]

177.   The debt should be deemed non-dischargeable under §523(a)(6) because Hann and SKH caused willful and malicious injury to Kahkeshani when

---

[211] 4 Collier on Bankruptcy ¶ 523.12(4) (16th ed. 2014).

[212] *See Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 486 (5th Cir. 1986); 4 Collier on Bankruptcy ¶ 523.12(4) (16th ed. 2014); *see also In re Beveridge*, *supra,* 416 B.R. at 570-71.

[213] *Kawaauhau v. Geiger*, supra, 523 U.S. at 62; *see also Raspanti v. Keaty (In re Keaty),* 397 F.3d 264, 270 (5th Cir. 2005).

[214] *Miller, supra,* 156 F.3d at 604-606.

[215] *Id.*

1032582

they converted Kahkeshani's funds for Hann's own personal use and benefit with the intent to deprive the beneficiaries of the trust funds.[216]

178.   By funneling money to Hann's other entities without any means of replenishing the funds, and knowingly and intentionally paying the suppliers of labor and/or materials, or otherwise completing the project, SKH and/or Hann committed, within the meaning of §523(a)(6), deliberate and intentional actions with an objective substantial certainty of causing resulting harm to the residence and finances of Kahkeshani.   No result other than that which is reflected by the damages in the Award was likely or possible when taking into consideration the financial dire straits of Hann's other businesses, Hann's repeated decisions to use the trust funds supplied by Kahkeshani to pay unrelated bills,[217] and the misrepresentations of Hann in the draw requests and even the outright and egregious lies about failed investments.[218] The overall pattern of conduct by Hann demonstrates, directly and/or by inference, the intent that is required by §523(a)(6).

179.   The systematic nature by which Hann used the funds of Kahkeshani for purposes unrelated to Kahkeshani's residence demonstrates why the conduct of

---

[216] *T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber)*, 2008 U.S. Dist. LEXIS 89438, 48-49, 2008 WL 4831380 (S.D. Tex. Nov. 3, 2008); *Beveridge, supra,* 416 B.R. at 571.

[217] Hann made the decisions on all payments to be made out of SKH and Hann's other projects. Award at p. 7-8.

[218] Award at p. 8 ("Jill Frey also testified that in a meeting she attended, Stephen Hann told Claimant's CPA, Vahid Shariatzadeh, that of the funds Claimant paid to SKH, approximately $200,000.00 went to a failed investment.").

SKH and/or Hann went beyond the construction trust fund situations that typically fall under §§523(a)(2) and/or (a)(A) and into the additional and exceptional conduct that is the subject of §523(a)(6).

180.   Accordingly, the Court should enter judgment that all of the amounts awarded in the Award, plus interest, are nondischargeable as to Hann pursuant to §523(a)(6) for willful and malicious injury.

## E.   Dischargeability of debt via *alter ego* / piercing the of the corporate veil theories

181.   The Award first determined that Hann was individually and directly liable to Kahkeshani under the Trust Fund Statute for the misuse of construction trust funds that occurred intentionally, knowingly, and with the intent to defraud. as the trustee of the construction trust funds, and this liability determination was made separate and apart from any liability of SKH or any alter ego determination.

182.   The Award also determined that, as a separate matter and based upon alter ego and/or piercing of the corporate veil theories, Hann individually is liable for the damages that SKH inflicted upon Kahkeshani based upon the fraudulent misrepresentation of SKH to Kahkeshani.[219]

---

[219] Award at p.17, ¶ 27.

| TRUST FUND STATUTE | FRAUDULENT MISREPRESENTATIONS |
|:---:|:---:|
| **Direct liability** | **Alter Ego liability** |
| **§523(a)(4)**<br>**§523(a)(6)** | **§523(a)(2)**<br>**§523(a)(6)** |

183.    Although no separate analysis is necessary to determine nondischargeability under §523(a) based upon an alter ego theory of recovery, it is helpful to note that the courts do not shy away from §523(a) nondischargeability based upon an alter ego theory of recovery.

184.    For example, in *Ward Family Found. v. Arnette (In re Arnette)*, the court held that (1) the creditor was entitled to a judgment against two companies under legal theories of false representations, actual fraud, breach of contract, and suit on a note (2) the debtor was personally liable for the companies' debts under an alter ego theory and as the company agent who made the false representations, and (3) the judgment was nondischargeable in accordance with §523.[220]

---

[220]  *Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 701-702 (Bankr. N.D. Tex. 2011).

185. If the debt is a debt for which the debtor is liable, it is nondischargeable within the meaning of §523.[221]   Vicarious liability based on agency law or a debtor's liability as a corporate alter ego is not outside the §523(a) exceptions to discharge.[222]

## VI.   REQUEST FOR ORAL ARGUMENT

186.   Kahkeshani respectfully requests that the Court hear oral argument with respect to this Motion and any response, as well as with respect to any cross-motions for summary judgment that may be filed by Hann.

## VII.   CONCLUSION AND PRAYER

WHEREFORE,  Saeed Kahkeshani, Plaintiff, respectfully requests that the Court, based upon the Award, enter judgment against Hann pursuant to 11 U.S.C. §523(a) for the aggregate amount set forth in the Award plus pre-judgment interest and post-judgment interest, attorneys' fees and expense, and costs to the extent permitted by applicable law.  Plaintiff respectfully requests such other and further relief to which he is entitled at law or in equity.

---

[221] *See Sec. Investory Prot. Corp. v. Rounds (In re Rounds)*, 2010 Bankr. LEXIS 6521, at *61-62 (Bankr. D. Colo. 2010); *In S. Atl. Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534 (N.D. Ohio 2006) (corporation was alter ego of debtor and thus debtor was personally liable for the corporation's debt, debt was nondischargeable under §§523(a)(2)(A), (4), (6));  *In Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43 (Bankr. E.D.N.Y. 2013), (upon an alter ego finding, actions and assets of corporation always, as a matter of fact and law, were the actions and assets of the debtor as an individual).

[222] *See id.*

Dated: June 22, 2015                    Respectfully submitted:

                                        WEYCER, KAPLAN, PULASKI
                                        & ZUBER, P.C.

                                        By: _/s/ Jeff Carruth_____
                                             JONATHAN D. SAIKIN
                                             (SBN 24041847)
                                             JEFF CARRUTH
                                             (SBN 24001846)
                                             11 Greenway Plaza, Suite 1400
                                             Houston, Texas 77046
                                             Telephone: (713) 961-9045
                                             Facsimile: (713) 961-5341
                                             jcarruth@wkpz.com / jsaikin@wkpz.com

                                        **ATTORNEYS FOR PLAINTIFF
                                         SAEED KAHKESHANI**

1032582

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on June 22, 2015 upon all parties in this matter through the ECF noticing system.

Reese W. Baker
Baker & Associates
5151 Katy Freeway, Suite 200
Houston, TX 77049

Pete Patterson
Patterson PC
4309 Yoakum Blvd
Houston, TX 77006

                /s/ Jeff Carruth
                JEFF CARRUTH

1032582

**EXHIBIT 1 — THE AWARD**

TELEPHONE
(713) 659-2800

FACSIMILE
(713) 654-0052

E-MAIL:
p.clote@clotelaw.com

# PAUL D. CLOTE
ATTORNEY AT LAW
FOUR HOUSTON CENTER
1221 LAMAR ST., SUITE 1090
HOUSTON, TEXAS 77010-3038

MEDIATOR/ARBITRATOR

ADMITTED TO PRACTICE:
TEXAS & COLORADO

February 28, 2014

**VIA CM/RRR & E-MAIL**

Mr. Jonathan D. Saikin
Weycer, Kaplan, Pulaski & Zuber, P.C.
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
jsaikin@wkpz.com

*Attorneys for Plaintiff Saeed Kahkeshani*

Mr. Pete T. Patterson
Patterson, P.C.
4309 Yoakum Boulevard
Houston, Texas 77006
pete@pyllp.com

*Attorneys for Defendant SKH 2000, Inc.
d/b/a Hann Builders & Stephen K. Hann*

Re:   Case No.: 2011-11105; In the matter of: *Saeed Kahkeshani v. SKH 2000,
Inc. d/b/a Hann Builders, et al. (In re Stephen Hann)*; In the United States
Bankruptcy Court for the Southern District of Texas, Houston Division.

Counsel:

Please find enclosed the Arbitral Award on Liability and Damages that I have
signed following your trial on the merits.

The parties previously left the issue of attorneys' fees to be addressed if and when
necessary. I suggest that the parties now confer, and advise me whether or not an agreement can
be reached regarding attorneys' fees. If not, you may either submit affidavits, or we can schedule
an evidentiary hearing.

I would like to know how you wish to proceed by Monday, March 10, 2014 at
4:00 p.m. Let's schedule a conference call then, assuming counsel are available.

If you have any questions, do not hesitate to let me know.

Very truly yours,

*Paul A. Clot*

Paul D. Clote
Sole Arbitrator

PDC:is
Enclosure

SAEED KAHKESHANI            §
          Claimant/Plaintiff,     §
                         §
v.                             §
                         §
SKH 2000, INC. d/b/a HANN BUILDERS,   §
& STEPHEN K. HANN,          §
          Respondents/Defendants.    §
                         §
                         §

## ARBITRAL AWARD ON LIABILITY & DAMAGES

       1.      The undersigned Arbitrator, having been duly sworn, and having considered the evidence and arguments of the parties, does hereby render the following Arbitral Award on Liability & Damages:

       2.      The parties to the Arbitration are: Claimant Saeed Kahkeshani ("Claimant" or "Kahkeshani"); and Respondents SKH 2000, Inc. d/b/a Hann Builders and Stephen K. Hann (collectively "Respondents" or "Hann").

       3.      The Arbitrator has jurisdiction over this matter pursuant to an Agreed Order executed by respective counsel for Claimant and Respondents, a true and correct copy of which is attached hereto and incorporated herein by reference.

       4.      Claimant and Respondents ("the Parties") mutually agreed that all issues of fact relating to claims and defenses asserted in Adversary No. 12-03256 and Adversary No. 12-03196, previously filed in the Chapter 7 bankruptcy of Stephen K. Hann, Debtor, Case No. 12-31500-H5-7, would be submitted to determination by the undersigned Arbitrator. The Parties stipulated, by and through their counsel of record, that all disputed issues of fact and law would be adjudicated by the Arbitrator, except (a) whether or not Debtor Stephen Hann is legally entitled to a discharge; and/or (b) whether a discharge should be denied; those legal issues will be determined by the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.

5.     The Parties jointly agreed that all issues of fact and law (except as noted in the preceding paragraph) regarding any allegations of breach of contract, fraud in the inducement, fraud by non-disclosure, fraudulent misrepresentation, false statements of financial condition, defalcation/breach of fiduciary duty, actual, exemplary or punitive damages, attorneys' fees and expenses, would be determined by the Arbitrator.

6.     The Parties agreed that the Arbitrator would make such factual and legal decisions, binding on the parties, as required to determine whether Hann violated Chapter 162 of the Texas Property Code, also known as the "Texas Construction Trust Fund Statute;" whether Hann engaged in common law fraud (including fraud in the inducement, fraud by misrepresentation, fraud by non-disclosure); whether Hann knowingly made false representations; whether Hann fraudulently induced Claimant to forego the statutory right of retainage by making false statements with the intent to deceive; whether Hann's conduct constituted civil theft or a breach of fiduciary duty; whether SKH 2000 breached its contract with Dr. Kahkeshani; whether Hann violated the Texas Business & Commerce Code, Chapter 24, the Uniform Fraudulent Transfer Act; whether Hann is an *alter ego* of the corporate Defendant SKH 2000; what if any actual damages arose because of a breach, if any, of duty owed to Claimant; and whether Claimant is entitled to recover exemplary damages and/or attorneys' fees and expenses as alleged.

7.     The hearing on the merits proceeded to trial before the Arbitrator on October 15, 2013.  Testimony was taken on October 15, 16 and 17 and November 5, 2013.

8.     On the above-referenced dates, Kahkeshani and Hann appeared by and through their counsel of record, before the undersigned Arbitrator for the final hearing on the merits in Houston, Texas.  Counsel for the Parties introduced into evidence the following

exhibits that were admitted into evidence: in Volume I, Exhibits 1, 3-34, 36-41, 42-45, 47-48; in Volume II, Exhibits 1-5; and Supplemental Exhibits 4-12.

        9.     The following witnesses testified: Vahid Shariatzadeh (live); Dr. Saeed Kahkeshani (live); Stephen Hann (live); Susan Scott Vacek (live); Lisa Childress (by deposition); John Timothy ("Tim") Stromatt (live); Mike Tisdale (live); Jill Frey (by deposition); Karen Travelstead (by deposition); Robert Chastain (live); Judy Hann (by deposition); Carol Burke (live).

        10.    Based upon the testimony of the witnesses and the documentary evidence, the following facts were clearly established:

- Claimant and SKH 2000, Inc. d/b/a Hann Builders ("SKH") entered into a residential construction contract for the construction of a single family home on lot 1, block 3 of the Pine Wood Estates subdivision (602 Pinehaven) in Houston, Texas 77024.

- As documented by the exhibits, Claimant paid SKH a total of $760,883.77 for work performed or to be performed under the construction contract; on behalf of Claimant, Bank of River Oaks made payments totaling $513,796.77 to SKH between September 2, 2010 and December 16, 2010. In addition, Claimant made payments directly to SKH between May 21, 2010 and December 15, 2010, totaling $247,087.00. Interest charges billed to and paid by Claimant to River Oaks Bank approximating $8,000.00 are not included in the $760,883.77 total.

- Although SKH received $760,883.77 from or on behalf of Claimant, SKH paid no more than $193,070.97 to subcontractors, vendors or suppliers for work performed on Claimant's house at 602 Pinehaven; *see* Exhibit 26.

Hann's expert, CPA Robert Chastain, detailed only $191,238.00 in payments by SKH to subcontractors and suppliers on Claimant's house.

- A number of subcontractors who were hired by SKH and furnished work and materials for construction of Claimant's house at 602 Pinehaven were not paid by SKH; as a result of non-payment, lien claims were asserted by Stock Building Supply of Texas, LLC/Bison Building Materials, LLC ("Bison") ($82,378.42); by Pursuit Properties, LLC d/b/a Exclusive Windows & Doors ($41,080.58); by Ilgen Electrical Services ($19,530.00); by Scholl Forest Industries, Inc. ($4,608.66); by Perfection Fireplace & Supply ($6,030.00); and by Meerkat Roof Tile ($14,100.00). Such lien claims totaled $167,727.66.

- Procon Enterprises, Inc. filed a lien claim against Claimant's property for ($13,115.57). However, the Procon lien was based on a debt owed by Ivan's Concrete, a subcontractor hired by SKH; SKH apparently had paid Ivan's Concrete, and Ivan's Concrete failed to pay Procon. On October 26, 2010, Ivan's Concrete furnished SKH a "Receipt for Sums Payable/Complete Waiver and Full Release of Lien of Subcontractor" in favor of SKH.

- Claimant was required to pay $91,887.00 to resolve all lien claims that had been filed against his 602 Pinehaven property.

- SKH admitted that it breached the construction contract with Claimant by failing to timely pay some of the subcontractors and suppliers and/or failing to obtain lien waivers from some subcontractors and/or suppliers.

- SKH's draw requests included the following language: "Contractor hereby requests the below itemized funds from lender for Contractor to pay for the listed items, all of which are a part of the construction project at the above referenced Property." The respective draw requests contained descriptions of the work (e.g. framing, windows, exterior doors, roofing, plumbing, electrical, etc.) and included a representation by SKH that specific dollar amounts for specific work described in the draw request "Will be paid for."

- Hann Builders, Ltd. ("HBL") is a residential construction company that was owned and operated by Stephen Hann prior to his operation of SKH. As of December 31, 2009, SKH carried on its books an "advance to affiliate" of $973,784.37 to HBL. That $973K "advance" to HBL was treated as an asset of SKH, increasing the stated value of SKH's balance sheet. Without the $973,784.37 asset, SKH would have had a negative net worth.

- On SKH's 2009 tax return, SKH showed a net operating loss of $120,717.

- According to SKH's 2009 tax return, SKH advanced or loaned $144,295 to HBL during 2009.

- HBL shut down in 2007 or early 2008 because it was not generating sufficient revenues; in the 5 to 7 years prior to its cessation of business, HBL incurred significant debts and was unable to pay those debts. After SKH began operating, SKH began paying the debts owed by HBL; SKH paid those debts and booked the amounts it paid on behalf of HBL as "advances to an affiliate."

- According to a December 20, 2010 email from Carol Burke, Hann's CPA, "SKH has been funding the capital requirements of HBL to pay off past payables and debt."

- On a weekly basis, Respondents' employees, agents or representatives prepared cash flow forecasts for SHK and for HBL, showing – on separate spreadsheets - debts owed by SKH and debts owed by HBL.  The SKH spreadsheets were titled "Unpaid Bills Detail" and designated in writing (and with color codes) which vendors, suppliers and/or subcontractors were "calling for payment" and which ones had "repeated calls +/or Critical payment."

- There is no evidence that HBL ever repaid any of the "advances" made to HBL by SKH.  There is no evidence that HBL had the ability to repay SKH the money that SKH was paying to HBL's creditors on behalf of HBL.

- During the times relevant to this litigation, the only HBL asset that was of any potential value was an ownership interest in a lot in The Woodlands; when that lot was sold in a "short sale," there was no equity in the property.  At all times material to this litigation, HBL did not have the ability to pay SKH the amounts advanced by SKH to HBL's creditors.

- Stephen Hann personally borrowed money from certain customers for whom he was building homes (e.g., promissory note for $100,000 by Stephen Hann to Daniel L. Boggio; promissory note of $200,000 by Stephen Hann to Michael B. Cox, such note guaranteed by HBL).

- In December 2010, Stephen Hann attempted to borrow $200,000 from Claimant, funds that Hann said were necessary to complete construction of Claimant's house; when Stephen Hann declined to use equity in his homestead and proceeds from his 401K account to collateralize the proposed $200,000 note, Claimant refused to loan any money to Hann.

- The debts Stephen Hann owed to Boggio and Cox were carried on SKH's balance sheet as debts of SKH. However, there is no evidence that such notes were the obligation of SKH. One note, the note to Cox, was guaranteed by HBL.

- By the summer of 2010, Stephen Hann knew that SKH was having financial difficulties; it is not credible to conclude that Mr. Hann was unaware of SKH's financial problems until November 12, 2010 when Bison served its notice of intent to file lien.

- Even Stephen Hann testified that he knew that "cash flow was tight" and that finances were "challenging" in September 2010.

- SKH operated off color-coded spreadsheets (e.g. Exhibits 44 & 45) that were prepared weekly. Decisions about who to pay were made by Stephen Hann. (Jill Frey: "And then Stephen each week would sit down and go through a spreadsheet on who was to be paid and then he would tell me okay, take this spreadsheet and people that have amounts in this column, you cut the checks for those people and I cut the checks." Frey deposition, p. 18, lines 4-9. " . . . when he [Stephen Hann] was done with the spreadsheet, which was the majority of the time, he would just call me back and say, Okay, open the spreadsheet and this is who you pay." Frey

deposition, p. 19, lines 12-15. "He – he would – he would fill in who was to be paid that week. So, he – I would need to prepare it to show all the outstanding bills that were out there, and then he would make – go through and make the decision on who got paid." Frey deposition, p. 20, lines 4-8).

- Jill Fry had been the office manager for about three years until 2009 when she became responsible for the accounting at SKH and HBL. Fry testified that she never paid anyone without Stephen Hann giving her permission; she paid only those persons whom Stephen Hann told her to pay. (Frey deposition, p. 21, lines 2-7).

- Jill Frey prepared the draw requests for Claimant's house. Karen Travelstead signed the draw requests. The draw requests were based on the project manager's percentage of completion and then approved by Stephen Hann as to the percentage of completion. (Frey deposition, p. 29, lines 6-12).

- Jill Frey also testified that in a meeting she attended, Stephen Hann told Claimant's CPA, Vahid Shariatzadeh, that of the funds Claimant paid to SKH, approximately $200,000.00 went to a failed investment.

- Karen Travelstead, a former sales representative of SKH, spoke with Claimant before the Residential Construction Contract was signed; Stephen Hann did not speak with Claimant before the contract for construction of the 602 Pinehaven house was signed on or about May 18, 2010.

- Ms. Travelstead confirmed that by the "summer of 2010, it became apparent that, you know, there were serious financial concerns, and I think

at that time, I had learned that there were some loans given by previous homeowners to help feed the – feed the fire, I guess." (Travelstead deposition, p. 17, lines 1-6).

- When Stephen Hann fired Ms. Travelstead at the end of January 2011, he accused her of "colluding" with Tim Stromatt and Mike Tisdale, an accusation for which he apologized several weeks later. (Travelstead deposition, p. 28, lines 22-25; p. 29, lines 1-15).

- Ms. Travelstead testified that Stephen Hann's day-to-day involvement with SKH varied; that Mr. Hann "managed the project mangers. He would work with Jill on, you know, the payables. He would meet with clients. He attended functions with the Greater Houston Builders Association ("GHBA") . . ." (Travelstead deposition, p. 32, lines 5-9). Ms. Travelstead conceded that Stephen Hann was preoccupied at times with some of the GHBA-type things." (Travelstead deposition, p. 32, lines15-16).

- Tim Stromatt was a project manager for SKH (on an independent contractor basis) between April 2010 and January 15, 2011. Stromatt testified that, shortly after he began work for SKH, he began having conversations with Stephen Hann, by phone and in the office, advising Mr. Hann about subcontractors that were unpaid. He saw the multi-colored spreadsheets that were used to track debts owed and payments made to creditors.

- Stromatt confirmed that by the late summer of 2010, he was concerned about SKH's financial stability and remaining employed; he discussed the

financial issues with Stephen Hann.  He talked to Stephen Hann about bills not being paid on time.

- According to Tim Stromatt, Jill Frey's desk was "full of a stack of checks" prepared for subcontractors and suppliers that were owed money.  Checks had been prepared but were being held at Stephen Hann's instruction; Hann had knowledge of who was and was not actually receiving checks.

- Tim Stromatt testified that SKH bid jobs to get the jobs, even when SKH knew that some jobs would not be moneymakers, since SKH needed the cash flow to continue operations.

- Mike Tisdale started as a contract employee for SKH in March/April 2010; he worked in purchasing, doing estimating and hiring the trades for the jobs.

- Like Frey and Stromatt, Tisdale confirmed that SKH did not operate based on its QuickBooks records; it operated off the color-coded spreadsheets to track, weekly, which subcontractors and suppliers had been paid and how much, and which ones should be paid in what amounts.

- In mid-December 2010, when Stephen Hann was soliciting a $200,000 loan from Claimant, he represented that "Hann Builders is a well established firm that has operated profitably since 1993." (December 16, 2010 email from Stephen Hann to Vahid Shariatzadeh, copy to Claimant).

- Respondents' damages expert, CPA Robert Chastain, opined that Claimant's damages could reasonably be calculated between $241,718 and $298,000.  The $298,000 opinion excluded from Claimant's damages the $100,000 commencement fee paid by Claimant; excluded from damages

indirect costs/overhead fee of $93,000; excluded from damages $72,000 based on the economic benefit derived from Claimant settling the outstanding liens for less than the face amount of the liens; and excluded from damages $24,500 (calculated as the 16% profit which the SKH contract allegedly had built into the contract price).

- Claimant's damage model was based on the total payments to SKH, less the amounts paid by SKH to subcontractors and suppliers for Claimant's house, less the amount of lien claims that were not required to be paid by Claimant, less the overhead allocable to Claimant's house.

### LIABILITY FINDINGS

11.     Respondents misapplied trust funds knowingly or intentionally or with intent to defraud.  It is undisputed that, out of the $760,883.77 in funds paid by Claimant to SKH, Respondents spent at most, only $193,070.97 on Claimant's house.  Even assuming arguendo that the $100,000 "commencement fee" was earned, hundreds of thousands of dollars were misapplied.  Claimant's funds were not used to pay the subcontractors, vendors and/or suppliers that SKH represented in its draw requests would be paid.

12.     Stephen Hann used Claimant's funds for his own personal use and benefit. While it is laudatory that Stephen Hann made efforts to pay the past bills and expenses of HBL, he was prohibited from doing so with trust funds that were paid to him by customers for whom SKH was building homes or performing re-modeling work.  The credible evidence in this case proved that Stephen Hann knew what expenses (for both SKH and HBL) accrued and were owed; what creditors of HBL and SKH had been paid, in what amounts and when; and what amounts would be paid to whom and when, on a weekly basis.

13.        Within days of receiving payments from Claimant, Stephen Hann caused payments to be made either to himself, or to HBL's creditors (including Andrew and Traci Pelter), or to Stephen Hann's own creditors (such as Michael Cox), or to Stephen Hann's judgment creditors, Dale and Susan Benditz (who had obtained an arbitration award against Stephen Hann).  As a result of Respondents making payments to Stephen Hann, on his behalf or for his benefit, there was less money remaining to pay the beneficiaries of the trust created with Claimant's funds.  It is reasonable to infer that, since Respondents made payments to Stephen Hann, on his behalf, or for his benefit when there were current or past due obligations to the beneficiaries of the trust funds paid by Claimant, Respondents intended to deprive the beneficiaries of the trust funds.  See e.g. *Wittig Grass Sales v. Cimarolli*, 2006 BANKR. Lexis 1595 (U.S. Bankruptcy Court [Houston Division] 2006); *Kirschner v. State*, 997 S.W.2d 335 (Tex. App. – Austin 1999, pet. ref'd); *Hughes v. State*, No. 03-11-00033-CR, 2013 Tex. App. LEXIS 4917.

14.        In summary, Stephen Hann made or caused to be made payments for his own benefit, using trust funds paid by Claimant, when he knew that subcontractors and suppliers for Claimant's house were not being paid.  The evidence proved that Stephen Hann's plan, intent or method was to use funds without regard to the construction project(s) for which the payments had been made.  Stephen Hann's practice was to use the funds to pay, among other things, HBL's creditors and his own personal creditors, and then attempt to increase cash flow to cover construction costs that remained unpaid. Stephen Hann and SKH had hoped to secure a large project for a customer named Johnson that would result in a substantial cash infusion, and thereby pay costs on Claimant's project and others.  Tim Stromatt testified that there were weekly discussions with Stephen Hann regarding the need to obtain the Johnson project to generate cash flow.  The Johnson project did not materialize.

*Final Arbitral Award– Page 12.*

15.     Stephen Hann confirmed that he was aware of Chapter 162 of the Texas Property Code (sometimes referred to as the "Trust Fund Statute"); that he knew that Claimant's payments for draw requests were supposed to be used to pay the subcontractors and suppliers who furnished labor and materials for Claimant's house, as described in the draw requests; that he made the weekly decisions on who would be paid, based on the information provided to him; and that he knew payments were being made to HBL's creditors, and to his own creditors (such as Boggio and Cox). While Stephen Hann's characterization of such practices is that they were "sloppy," they were more than that. They were practices that disregarded the obligations of the Trust Fund Statute.

16.     Testimony from witnesses concerning Respondents' intent and actions concerning other purchasers of homes from Stephen Hann was relevant and admissible. While evidence of disputes with other customers is not admissible to prove that Respondents acted similarly with respect to Claimant, evidence that proves motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident is certainly admissible. Where knowledge, intent or plan are relevant (as in the instant case), other acts of a similar nature that are so closely connected with the act charged, so as to disclose a general plan or scheme are admissible. *United States v. Hord*, 6 F.3d 276, 286 (5th Circ. 1993); *United States v. Griffin*, 324 F.3d 330 (5th Circ. 2003); *United States v. Dula*, 909 F.2d 772, 777 (5th Cir. 1993).

17.     Respondents maintained two different accounts at Prosperity Bank that were titled as "Construction Trust Account[s]." Account No. 05 367411 was opened in the name of "SKH 2000, Inc. dba Hann Builders Construction Trust Account" (the "411 account"). Account No. 1102182137 was opened as "Hann Builders Ltd. Construction Trust Account" (the "137 account"). The designation of the accounts as "construction trust accounts" indicates that Stephen Hann was aware of his obligation under Section 162.006 of the Property Code to deposit

*Final Arbitral Award– Page 13.*

trust funds in a construction account, and to treat the payments from his customers as trust funds. During the time relevant to this litigation, Respondents did not maintain separate accounts for each on-going construction project.

18.     The following illustrations are examples of Respondents' submitting draw requests, receiving payments from Claimant and diverting trust funds without first fully paying all current or past due obligations incurred by SKH (a trustee) to the subcontractors and suppliers who worked on Claimant's house (beneficiaries of the trust funds). On August 5, 2010, SKH received a $37,222 payment from Claimant. Between August 5 and August 27, 2010 (when an additional draw for $142,000 was submitted by SKH to Claimant), not a single check was paid to subcontractors or suppliers that worked on Claimant's house. On November 10, 2010, an additional $31,000 was wired to SKH's 411 account from Claimant's bank. Between November 10 and November 16, 2010, no contractors or suppliers that work on Claimant's house were paid (although Tim Stromatt and Mike Tisdale, SKH's employees were paid). On November 17, 2010, SKH submitted an additional draw request to Claimant for $52,974.

19.     After November 17, 2010, SKH received a wire transfer of $52,974 from Claimant's bank; a check from Claimant in the amount of $12,528 was deposited in SKH's account on December 15, 2010; and an additional $23,500 was wired to SKH from Claimant's bank on December 16, 2010. Notwithstanding SKH's receipt of such trust funds, after November 17, 2010, only two payments were made to subcontractors or suppliers on Claimant's house: a $3,000 payment on November 18, 2010 to Joe's Carpenters and a $2,980 payment on December 13, 2010 to Ferguson Enterprises. After November 17, 2010, payments were made to Stephen Hann personally, to Stephen Hann's personal creditors (Pelter, Benditz, Cox, Boggio), and to HBL's creditors. It is reasonable to conclude that by making such payments, at a time

when SKH had current or past due obligations to trust beneficiaries, Respondents intended to deprive the beneficiaries of their trust funds.

20.     Stephen Hann was the sole officer, director and shareholder of SKH.  The $760,883.77 that SKH received from Claimant and Claimant's bank constituted trust funds under the Trust Fund Statute.  As the officer, director and owner of SKH, Stephen Hann was a trustee for Claimant's funds; Claimant as well as the subcontractors and materialmen who furnished labor and materials for Claimant's 602 Pinehaven house were beneficiaries of the trust funds received by SKH.

21.     Respondents argue that there is no evidence of the requisite "intent to defraud" as defined by Section 162.005(1) Tex. Prop. Code.  Respondents' counsel concedes that "SKH 2000 may have acted negligently or even with gross negligence."  (Pete Patterson's undated letter/brief regarding Trust Fund Statute, p. 2).  Under 162.005(1)(A), a trustee acts with "intend to defraud" when the trustee "retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds."  In the case at bar, the evidence proved that Stephen Hann used, disbursed or diverted trust funds with intent to deprive the beneficiaries of the trust funds.

22.     While Stephen Hann may have hoped to repay the beneficiaries with other monies at some time in the future, the evidence was conclusive that Mr. Hann knew that the subcontractors and suppliers on Claimant's house were not being paid with Claimant's money. Stephen Hann knew that SKH did not have sufficient funds to otherwise pay the vendors who had provided labor and materials for Claimant's house.  Mr. Hann reviewed the expenses on a weekly basis; he was the person who determined who would be paid with the money in SKH's bank accounts; he was the person who used Claimant's funds to pay other expenses – liabilities of HBL, liabilities of his own, and liabilities of SKH unrelated to Claimant's house.  No

payments were made without Stephen Hann's knowledge and approval. Clearly, Mr. Hann had actual awareness of the practice that was being perpetrated. He had to have known that he was using Claimant's trust funds to pay expenses unrelated to Claimant's house. No other conclusion is reasonably inferable from the evidence.

23.        There is no evidence to support violations of Sections 162.005(1)(B) or (C).  Although Respondents did not maintain separate construction trust accounts for separate construction projects, there is no requirement that they do so.  While it might have been the preferred practice, and may have facilitated tracking of trust funds for each particular project, there was no requirement to segregate Claimant's trust funds into a separate bank account.  Nor is there evidence that Respondents failed to maintain sufficient records as required by Section 162.007 Tex.Civ.Prac.&Rem.Code.  The direct and indirect costs for each project undertaken by SKH could be derived from SKH's account records, although perhaps not immediately or easily and not without some accounting analysis.

24.        SKH breached its contract with Claimant.  SKH failed to pay the subcontractors and suppliers that provided labor and materials for Claimant's house; and failed to provide lien waivers or releases of liens from all such subcontractors and suppliers.

25.        SKH made fraudulent misrepresentations to Claimant.  In the draw requests, SKH asked for funds to pay for the work listed in the draw requests. Anyone reading the draw requests would reasonably conclude that SKH was representing that the funds that were the subject of the draw request would be used to pay for the work listed in the draw request. SKH did not intend to use the funds that were the subject of the draw requests to pay for the items listed on the draw requests.  Karen Travelstead signed the draw requests.  The evidence was that none of the draw requests were sent to Stephen Hann, with the possible exception of two.  Email correspondence introduced into evidence revealed that a copy of Change Order No.

5 (for cast stone) was sent to Stephen Hann. However, there is no record of what draw requests, in fact, were sent to Mr. Hann. There is insufficient record evidence to prove that Stephen Hann (as opposed to other SKH employees) was directly and personally responsible for the misrepresentations contained in the draw requests. The Arbitrator is unable to conclude that Stephen Hann, individually, made fraudulent misrepresentations to Claimant.

26.     The record evidence is insufficient to establish liability on the basis of (a) the Texas Theft Liability Act, Section 134.001, et seq. Tex.Civ.Prac.&Rem.Code; or (b) the Texas Uniform Fraudulent Transfer Act, Section 24.001, et seq. Tex.Bus.&Com.Code.

27.     The record evidence is sufficient to establish that Stephen Hann should be held personally liable for the misrepresentations of SKH pursuant to a piercing the corporate veil or *alter ego* theory. The evidence was clear that Stephen Hann diverted trust funds deposited with SKH by Claimant (and other homeowners); Mr. Hann used those funds to pay creditors of HBL and to pay his own creditors. Stephen Hann treated SKH's funds as if they were his own; he directed that the funds be used in whatever manner he personally desired. There was no economic benefit to SKH from paying the creditors of HBL, supposedly a separate corporation, or from paying Stephen Hann's own creditors. The evidence showed that, for the case at bar, there was such unity between SKH and Stephen Hann that the separateness of the SKH should be ignored; holding only SKH liable for SKH's misrepresentations to Claimant would result in an injustice. The undersigned Arbitrator concludes that, as to the acts and events involving Claimant, SKH was used as a mere tool or business conduit of Stephen Hann.

## DAMAGES FINDINGS

28.     Claimant's damages consist of $507,812.80 in trust funds diverted by Respondents (calculated based on the $760,883.77 that Claimant paid to SKH; less the $193,070.97 SKH spent on Claimant's house). Section 162.031(b) Tex.Civ.Prac.&Rem.Code

*Final Arbitral Award– Page 17.*

provides an affirmative defense based on trust funds that are used to pay the trustee's actual expenses "directly related to the construction or repair of the improvement." In the instant case, the Parties argued that SKH's overhead or actual expenses directly related to the construction of Claimant's house was no more than $30,000 (Claimant's position) or not less than $93,000 (Respondents' position). The Arbitrator finds that the overhead costs attributable to Claimant's house were $60,000. Accordingly, Claimant's damages (exclusive of any attorneys' fees, legal interest or court costs) are not more than $447,812.80.

29.       The liens filed against Claimant's property totaled $167,727.66. Claimant paid $91,887.00 to settle, compromise and remove the liens. The difference, $75,840.66, was an unintended economic benefit to Claimant. In their analysis and arguments in this case, both Parties considered the unintended economic benefit to Claimant as an offset of Claimant's damages. Accordingly, the undersigned Arbitrator finds that Claimant's damages of $447,812.80 should be credited with $75,840.80, the value of work performed on the house for which Claimant was not required to pay. Claimant's actual damages for violation of the Trust Fund Statute therefore total $371,972.13.

30.       Claimant's damages proximately caused by SKH's breach of contract and fraudulent misrepresentations are the same damages ($371,972.13) Claimant sustained as a result of Respondents' violation of the Trust Fund Statute.

31.       Claimant is the prevailing party in this matter. Claimant is entitled to recover his reasonable and necessary attorneys' fees pursuant to the breach of contract claim and the violation of the Trust Fund Statute. If the Parties are unable to agree upon the attorneys' fees, then affidavits may be submitted in support of the contested issue, or an evidentiary hearing will be held.

32.     Judgment is hereby awarded in favor of Claimant and against Respondents, jointly and severally, for $371,972.13, plus legal interest, plus reasonable and necessary attorneys' fees and arbitration costs (in an amount yet to be determined).   All other relief not expressly granted is denied.

Signed the ___28_ᵗʰ___ day of ___February___, 2014.


_____
PAUL D. CLOTE, ARBITRATOR

IN THE MATTER OF PRIVATE ARBITRATION OF:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br>　　STEPHEN K. HANN<br>　　Debtor(s) | §<br>§<br>§ | CASE NO. 12-31500-H5-7<br>Chapter 7 |

| | | |
|---|---|---|
| SAEED KAHKESHANI<br>　　Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | Adversary No. 12-03196 |
| SKH 2000, INC. dba HANN BUILDERS,<br>ET AL.<br>　　Defendants. | §<br>§<br>§<br>§ | |

## AGREED ORDER

Plaintiff Saeed Kahkeshani ("Dr. K") and Defendants SKH 2000, Inc. d/b/a Hann Builders, Stephen K. Hann, Inc. d/b/a Hann Builders, Hann Builders, Ltd. d/b/a Hann Builders, and Stephen K. Hann (collectively "Hann" or "Defendants") appeared by and through their respective counsel of record. As set forth in more detail below, Dr. K and Hann agreed to submit all disputed issues of fact and law to the undersigned arbitrator, Paul D. Clote ("Arbitrator"). Dr. K seeks relief set out in the Plaintiff's Second Amended Petition filed in Cause No. 2011-11105, and in Plaintiff's Original Complaint of Saeed Kahkeshani for Non-Discharge of Indebtedness and Denial of Discharge. The Hann Defendants have asserted their defenses as set forth in Defendants' Second Amended Answer filed in Cause No. 2011-11105.

The parties jointly agree that all issues of fact and law regarding any allegations of breach of contract, fraud in the inducement, fraud by non-disclosure, fraudulent misrepresentation, false statements of financial condition, defalcation/breach of fiduciary duty,

actual, exemplary or punitive damages, attorneys' fees and expenses, shall be determined by the Arbitrator. Although Plaintiff Dr. K has requested that Stephen K. Hann be denied a discharge, the parties agree that whether or not Mr. Hann is legally entitled to a discharge, or whether a discharge should be denied is a question of law to be decided by the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division. The Arbitrator will make factual determinations based on the evidence, applying Texas law.

The Arbitrator will make such factual and legal decisions, binding on the parties, as required to determine whether Hann violated Chapter 162 of the Texas Property Code, also known as the "Texas Construction Trust fund Statute;" whether Hann committed common law fraud (including fraud in the inducement, fraud by misrepresentation, fraud by nondisclosure) ; whether Hann knowingly made false representations; whether Hann fraudulently induced Dr. K to forego the statutory right of retainage, by making false statements with the intent to deceive; whether Hann's conduct constituted civil theft or a breach of fiduciary duty;  whether SKH 2000 breached its contract with Dr. K; whether Hann violated The Texas Business & Commerce Code, Chapter 24, the Uniform Fraudulent Transfer Act; whether Hann is an alter ego of the corporate Defendants. Thereafter, the arbitrator will determine, what if any applicable actual damages arose because of a breach owed, and a legal claim established against the Hann entities,  to Dr. K for the claims being asserted; and whether Plaintiff Dr. K is entitled to recover exemplary damages and/or attorneys' fees and expenses and interest as alleged.

It is expressly agreed by the parties that all pending claims asserted against Judy Johnston Sadler Hann are hereby nonsuited without prejudice by Dr. K and shall not be a part of this arbitration hearing.

*Agreed Order* – Page 2.

The parties agree to commence the arbitration hearing on the merits beginning Tuesday, October 15, 2013 at 10:30 a.m.

Plaintiff and Defendants, each, agree to pay one-half of the Arbitrator's fees and expenses, without prejudice to the right of any party to seek reimbursement for those fees and expenses as part of a legal claim. The Arbitrator shall have the authority to equitably divide such expenses if he so chooses.

Signed the _14th_ day of October, 2013.

Paul D. Clote, Arbitrator

APPROVED AS TO FORM AND CONTENT:

Jonathan D. Saikin
State Bar No. 24041847
Weycer, Kaplan, Pulaski & Zuber, P.C.
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
jsaikin@wkpz.com
713.961.9045
713.961.5341– Fax

*Attorneys for Plaintiff Saeed Kahkeshani*

Pete T. Patterson
State Bar No. 15603580
Patterson, P.C.
4309 Yoakum Boulevard
Houston, Texas 77006

*Agreed Order*– Page 3.

pete@pyllp.com
713.874.6448
713.874.6445 – Fax

*Attorneys for Defendant SKH 2000, Inc. d/b/a Hann Builders, And Stephen Hann*

Reese W. Baker
State Bar No. 01587700
Baker &Associates
5151 Katy Freeway, Suite 200
Houston, TX 77049
Reese.Baker@bakerassociates.net
713.869.9200
713-869-9100 – Fax

*Attorney for Debtor Stephen Hann*