IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| STEPHEN K. HANN, | § | CASE NO.  12-31500 |
| | § | |
| Debtor | § | |
| | § | |
| SAEED KAHKESHANI | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 12-03256 |
| | § | |
| STEPHEN K.  HANN | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY AND OBJECTION TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT (RE: DOCKET NOS. 76, 79)**

## <u>TABLE OF CONTENTS</u>

1.   Introduction and general response.....................................................................2

2.   Hann is  not permitted to re-litigate the arbitration. ........................................5

3.   The Award determined the facts necessary to determine
     nondischargeability under §523(a). ................................................................7

   a.   §523(a)(4). ....................................................................................................9

   b.   §523(a)(2)(A)...............................................................................................10

   c.   §523(a)(6). ..................................................................................................12

4.   Fraud, false representation, and/or false pretenses of SKH may be
     attributed to Hann for §523(a)(2)(A) liability. .............................................13

5.   Comment *i* does not limit the preclusive effect of the Award. .....................16

6.   Response to Hann's cross motions for summary judgment. ..........................18

   a.   Response and objection to Section A of the Cross Motion — §523(a). .......18

   b.   Response and objection to Section B of the Cross Motion — §727(a).........22

   c.   Response and objection to Section C of the Cross Motion —
        exemplary damages........................................................................................22

   d.   Conclusion regarding Cross Motion...............................................................22

     CONCLUSION AND PRAYER ........................................................................23

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

### <u>United States Supreme Cases</u>

*Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) ....................................5

*Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754 (2013)..................................................... passim

*Montana v. United States*, 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) ...................5, 16

*Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1878) ......................................................... 14-15

### <u>United States Court of Appeals Cases</u>

*Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583 (5th Cir.1987)............................................................4

*Dennis v. Dennis (In re Dennis)*, 25 F.3d 274 (5th Cir. 1994) .......................................................9

*Keaty, In re,* 397 F.3d 264 (5th Cir. 2005) .................................................................................7, 14

*Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277 (5th Cir. 1992)...................15, 16

*Nicholas, In re*, 956 F.2d 110 (5th Cir. 1992) ................................................................................4

*Ratliff Ready-Mix, L.P. v. Pledger (In re Pledger)*, 592 Fed. Appx. 296 (5th Cir. 2015) ..............4

*Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir.1995)...............................................5, 6, 14

*Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314 (5th Cir. 2005) .................15, 16

### <u>United States District Court Cases</u>

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781 (E.D.Tex.
    2000) ........................................................................................................................................6

*Whitaker v. Moroney Farms Homeowners' Ass'n*, 2015 U.S. Dist. LEXIS 73386 (E.D.
    Tex. June 5, 2015) ....................................................................................................................4

### <u>United States Bankruptcy Court Cases</u>

*Hodnett v. Loevner (In re Loevner)*, 167 B.R. 824 (Bankr.E.D.Va. 1994)....................................14

*Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326 (Bankr.W.D.Tex. 2009) ................5

*Nibbi v. Kilroy (In re Kilroy)*, 357 B.R. 411 (Bankr.S.D.Tex. 2006)...........................................14

*Pacific Addax Co. v. Lau (In re Lau)*, 2013 Bankr. LEXIS 4587 (Bankr.E.D.Tex. Nov. 4, 2013) ...................................................................................................................................15, 16

*Shaikh v. Memon (In re Memon)*, 2014 Bankr. LEXIS 42 (Bankr.S.D.Tex. Jan. 6, 2014) ...........18

*Sok San Pak v. Bo Kyoung Kim (In re Bo Kyoung Kim)*, 2013 Bankr. LEXIS 4005, 26-34 (Bankr. E.D. Tex. Sept. 25, 2013) ...............................................................................................15

*State Farm County Mut. Auto. Ins. Co. v. Van Banning (in re Van Banning)*, 2004 Bankr. LEXIS 1994, 3-8 (Bankr.N.D.Tex. Dec. 8, 2004) .....................................................................14

*Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663 (Bankr.N.D.Tex. 2011) ...........7. 14

*Wash v. Moebius (In re Wood)*, 167 B.R. 83 (Bankr.W.D.Tex. 1994)...........................................6

## <u>Texas Supreme Court Cases</u>

*Castleberry v. Branscum,* 721 S.W.2d 270 (Tex. 1986).................................................................13

## <u>STATUTES</u>

## <u>Federal Statutes</u>

11 U.S.C. §523..................................................................................................................... passim

## <u>State Statutes</u>

Tex. Prop. Code §162.005 ................................................................................................... passim

Tex. Prop. Code §162.031 ................................................................................................... passim

## <u>Treatises</u>

4 Collier on Bankruptcy §523.08 (16th ed., Lexis 2015) ............................................................16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| STEPHEN K. HANN, | § | CASE NO.  12-31500 |
| | § | |
| Debtor | § | |
| | § | |
| SAEED KAHKESHANI | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 12-03256 |
| | § | |
| STEPHEN K.  HANN | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S REPLY AND OBJECTION TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT (RE: DOCKET NOS. 76, 79)

TO THE HONORABLE KAREN K. BROWN, U.S. BANKRUPTCY JUDGE:

Saeed Kahkeshani, Plaintiff herein ("Kahkeshani") files this *Reply and Objection* ("Reply") to the *Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment* (Docket No. 79) (the "Response") filed herein on July 21, 2015 by Stephan A. Hann, Defendant ("Hann") regarding the *Motion for Summary Judgment Regarding Claims Under 11 U.S.C. §523(a), and Request for Oral Argument* (Docket No. 76) (the

"Motion") previously filed herein by Kahkeshani, and in support thereof would show the Court the following.[1]

## 1.    Introduction and general response.

The Response does not diminish the right of Kahkeshani to judgment under 11 U.S.C. §523(a), and especially with respect to §523(a)(4).  The Response attempts impermissibly to retry the arbitration by an unrelenting stream of additional facts and suppositions on issues that were actually litigated and necessarily decided in Kahkeshani's favor in the arbitration conducted by the arbitrator selected by this Court, Paul Clote ("Clote").  All of the fundamental facts regarding Hann's use and misuse of construction trust funds relevant to the inquiries under §523(a) were submitted by both parties and were decided by Clote in Kahkeshani's favor.  The various denials and equivocations made by Hann throughout the Response that disagree with the Award[2] or assert facts contrary to the findings and conclusions of the Award[3] are of no consequence and should not be considered by the Court.

---

[1] Hann filed his Response on July 21, 2015, one day after the deadline set by the Court in the docket entry dated May 21, 2015 in Adv. No. 12-03196. According to the docket entry and the Court's ruling of May 21, 2015: "Mr. Carruth to file new Motion for Summary Judgment by 6/22/15 and Mr. Baker's Response (cross motion) by 7/20/15 and each may file responses 10-days after."   Because Hann's response was late-filed on July 21, 2015, Kahkeshani is filing this reply on the tenth (10th) day subsequent thereto.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the original Motion.  *A true and correct copy of the Award is attached as Exhibit 1 to the Motion, and is incorporated herein as if fully set forth verbatim.*

[3] *See e.g.*, Response ¶¶ 42, 43, 57, 58, 59, 62, 66, 69, 70, 219-254.

The prevailing theme asserted by Hann in the Response is that Hann did not harbor the necessary scienter under the *Bullock* decision of the Supreme Court[4] for liability under §523(a).[5]   Hann also asserts in relation to *Bullock* that (1) he did not have contemporaneous knowledge about trust funds that were misspent, and (2) he undertook miscellaneous other actions allegedly to support the failing SKH business that exhibited Hann's supposedly good intentions.[6]   The impossibility of these and similar positions of Hann is that all of these matters were presented by the parties in the arbitration and then decided by Clote against Hann in painstaking detail after four (4) days of testimony,[7] twelve (12) witnesses,[8] and 59 admitted exhibits.[9]   The Award determined that Hann individually and directly violated §162.031 off the Trust Fund Statute (*i*) knowingly,[10] (*ii*) intentionally,[11] and (*iii*) with intent to defraud as defined in §162.005(1)(A),[12] thus satisfying *Bullock* in every manner possible.   Furthermore, as explained in the Motion and reiterated

---

[4] *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754 (2013).

[5] *See id.* at 1758.  Hann in the Response (at pp. 25-26, ¶¶ 219-220) also portrays *Bullock* as creating a new rule for all of §523(a) when *Bullock* was really about conforming the analysis of §523(a)(4) defalcation to long existing thinking as to the rest of §523(a). *See id.* at 1759.

[6] *See* Response, at pp. 28-29, ¶¶ 226-229.

[7] *See* Award, at p. 2, ¶ 7.

[8] *See* Award, at p. 2-3, ¶ 8.

[9] *See* Award, at p. 3, ¶ 9.

[10] *See* Award, at p. 12, ¶ 14; *see also* discussion in the Award, pp. 12-15, ¶¶ 15-20.

[11] *See* Award, at p. 12, ¶ 14; *see also* discussion in the Award, pp. 12-15, ¶¶ 15-20.

[12] *See* Award, at p. 15, ¶ 21.

below, the *Boyle-Nicholas* framework for evaluating Trust Fund Statute violations under §523(a)(4) already incorporated a scienter requirement before *Bullock*.[13] The Fifth Circuit after *Bullock* has determined that §523(a)(4) nondischarge liability still is achieved by a violation of §§162.031 and 162.005(1)(A) of the Trust Fund Statute.[14]

Even if, and assuming only for the sake of argument, that this Court can or should re-examine key facts decided by Clote, and that further assuming that Hann carried forth in a complete and blissful fog about the misused funds, Hann still as a matter of law would be subject to liability under *Bullock* and §523(a)(4) because the conduct described by Hann himself in his Response falls within the reckless disregard / gross negligence component of the *Bullock* holding.[15]

---

[13] *See Boyle v. Abilene Lumber, Inc.,* 819 F.2d 583, 587-88 (5th Cir.1987) ("The plain language of the statute and limited evidence of congressional intent indicate that the pertinent debt discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct ***whereby a debtor has deprived others of their property by criminal acts***; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's.") (emphasis added); *In re Nicholas*, 956 F.2d 110, 113 (5th Cir. 1992) ("We agree that the Texas statute's amendments [adding knowing or intentional conduct under §162.031] have expanded the realm of debts that are nondischargeable under the Bankruptcy Code"); *Ratliff Ready-Mix, L.P. v. Pledger (In re Pledger),* 592 Fed. Appx. 296, 302 (5th Cir. 2015) (the 1987 amendments to §162.031 added "knowingly or intentionally" and broadened the scienter requirement).

[14] *See Pledger, supra,* 592 Fed. Appx. at 302.

[15] *See Bullock*, *supra,* 133 S. Ct. at 1757 ("We describe that state of mind [as to defalcation liability under §523(a)(4)] as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.").

## 2.    Hann is  not permitted to re-litigate the arbitration.

Hann begs the Court to look into his heart and find the subjective, pure intention that alleviates §523(a) liability,[16] regardless of the detailed findings of the Award based upon volumes of objective, extrinsic evidence.[17]  The Court need not and should not engage in any such exercise.

The fundamental concept of collateral estoppel is that application of the doctrine precludes a party from re-litigating issues or claims that already have been adjudicated.[18] "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[19]  "[A]n analysis of collateral estoppel is not an invitation for a party to re-litigate the issue already decided by the previous court or, for that matter, to collaterally attack the previous court's ruling."[20] "[W]here, …the factual issue that forms the basis for the creditor's theory of

---

[16] *See* Response, at pp. 28-29, ¶¶ 226-229.

[17] *See* Award, at pp. 2-3, ¶¶ 7-9 (four (4) days of testimony, twelve (12) witnesses, 59 admitted exhibits).

[18] *See Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

[19] *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995), *quoting Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469 (1970).

[20] *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 336-337 (Bankr.W.D.Tex. 2009).  Thus, in deciding the application of issue preclusion to the §523(a) claim in *Powers*, Judge Clark rejected consideration of the debtor's affidavit attacking the underlying order.  *See id.* at 337.  Similarly, the Court should not consider Hann's affidavit that is attached to the Response.

nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may re-litigate those grounds."[21]

Clote decided Hann's scienter under the Trust Fund Statute,[22] relevant to §523(a)(4), and thus decided the factual issue that forms the basis for Kahkeshani's theory of nondischargeability under §523(a)(4).  According to the Award, Hann individually and directly violated the Trust Fund Statute intentionally, knowingly, and with intent to defraud.[23]  Questions of payment timing and methodology, the purpose of payments, and similar questions were issues actually litigated in the arbitration and were thoroughly addressed by Clote and decided against Hann in the Award.[24]  Hann had his chance in the arbitration.  No further analysis of Hann's intentions in relation to the Trust Fund Statute is necessary or permitted.

Clote also decided false pretenses, false representations, and/or actual fraud, as well as alter ego,[25] relevant to §523(a)(2)(A).  The Award decided the factual issues that form the basis for Kahkeshani's theory of nondischargeability under

---

[21] *Recoveredge, supra,* 44 F.3d at 1294; *see also Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 797 (E.D.Tex. 2000) ("To be sure, we recognize that whenever a court considers applying the doctrine of collateral estoppel, there is always a lingering question whether the party might have succeeded in proving his point if he had only been given a second chance at producing evidence. Without more, however, this question is not sufficient to outweigh the extremely important policy underlying the doctrine of collateral estoppel — that litigation of issues at some point must come to an end.").

[22] The Trust Fund Statute violations were part of the matters submitted to arbitration. *See* Award at p. 2, ¶ 2.

[23] *See* Award, at pp. 3-15, ¶¶ 10-21.

[24] *See* Award, at pp. 3-15, ¶¶ 10-21.

[25] Fraud and alter ego were part of the matters submitted to arbitration. *See* Award at p. 2, ¶ 2.

§523(a)(2)(A).  SKH made fraudulent misrepresentations to Kahkeshani for which Kahkeshani suffered damages.[26]  The Award determined that Hann should be held personally liable for the misrepresentations of SKH pursuant to a piercing the corporate veil or alter ego theory.[27]

### 3.  The Award determined the facts necessary to determine nondischargeability under §523(a).

The Award demonstrates that the subsidiary facts related to all relevant §523(a) determinations for this action, and especially with respect to the §523(a)(4), were actually litigated and necessarily decided in the arbitration.[28] Indeed the entire arbitration was designed for Clote to determine all fact issues and questions of law, and then for this Court to determine whether those facts and legal conclusions result in non-dischargeability.  The Award memorializes the following agreements.

> 4.  The Parties stipulated, by and through their counsel of record, that all disputed issues of fact and law would be adjudicated by the Arbitrator, except (a) whether or not Debtor Stephen Harm is ***legally*** entitled to a discharge; and/or (b) whether a discharge should be denied; those ***legal issues*** will be determined by the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.

---

[26] *See* Award, at p. 16, ¶ 25.

[27] *See* Award, at p. 17, ¶ 27.  *See Ward Family Found. v. Arnette (In re Arnette),* 454 B.R. 663, 692-693 (Bankr.N.D.Tex. 2011) ("There are "three broad categories in which a court may pierce the corporate veil:  (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used [as a sham] to perpetrate a fraud.") (internal citations omitted).

[28] *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005).

5.  The Parties jointly agreed that ***all issues of fact and law*** (except as noted in the preceding paragraph) regarding any allegations of breach of contract, fraud in the inducement, fraud by non-disclosure, fraudulent misrepresentation, false statements of financial condition, ***defalcation/breach of fiduciary duty,*** actual, exemplary or punitive damages, attorneys' fees and expenses, would be determined by the Arbitrator.

6.  ***The Parties agreed that the Arbitrator would make such factual and legal decisions, binding on the parties, as required to determine whether Hann violated Chapter 162 of the Texas Property Code, also known as the "Texas Construction Trust Fund Statute;"*** whether Hann engaged in common law fraud (including fraud in the inducement, fraud by misrepresentation, fraud by non-disclosure); whether Hann knowingly made false representations; whether Hann fraudulently induced Claimant to forego the statutory right of retainage by making false statements with the intent to deceive; whether Hann's conduct constituted civil theft or a breach of fiduciary duty; whether SKH 2000 breached its contract with Dr. Kahkeshani; whether Hann violated the Texas Business & Commerce Code, Chapter 24, the Uniform Fraudulent Transfer Act; ***whether Hann is an alter ego of the corporate Defendant SKH 2000***; what if any actual damages arose because of a breach, if any, of duty owed to Claimant; and whether Claimant is entitled to recover exemplary damages and/or attorneys' fees and expenses as alleged.[29]

This Court now is called upon to determine whether those subsidiary facts and conclusions contained in the Award establish the elements of nondischargeability under §523(a).[30]

[C]ollateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question — that is, an issue which encompasses the same prima facie elements as the bankruptcy issue

---

[29] *See* Award, at pp. 1-2, ¶ 4 (emphasis added).

[30] *See id.* As noted in the Motion, Hann never challenged the validity of, or Kahkeshani's right to confirmation of, the Award in any way.

— and the facts supporting the court's finding are discernible from that court's record.[31]

The subsidiary facts and conclusions relevant to the §523(a) determinations, and especially with respect to the §523(a)(4) determinations, all were determined by Clote in the arbitration.

### a.  <u>§523(a)(4).</u>

With respect to §523(a)(4), first, the Award made specific, subordinate, factual findings on the identical dischargeability issue in question.[32]  As set forth in the Award, and as detailed in Section III ("Substance of the Award") of the Motion, Clote determined that Hann violated §162.031 of the Trust Fund Statue and determined Hann's scienter under the Trust Fund Statute.   Hann violated §162.0031 of the Trust Fund Statute (*i*) intentionally, (*ii*) knowingly, and (*iii*) with intent to defraud under §162.005(1)(A).[33]  Hann concedes in the Response all of the other elements of liability under §162.031 and §162.005(1)(A) — that Hann was a trustee, that funds paid by Kahkeshani were trust funds, and that the trust

---

[31] *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994);

[32] *See* Award, at pp. 3-15, ¶¶ 10-21.

[33] Kahkeshani need only demonstrate that Hann's misuse of funds occurred with one of the three mental states of §162.031(intentional, knowing, <u>***or***</u> with intent to defraud) in order to obtain nondischargeability under §523(a)(4).  The Award shows that Hann's conduct was intentional, knowing, <u>***and***</u> with the intent to defraud under §162.031.

funds were misspent.[34]   Second, the facts supporting Clote's finding are easily

discernible throughout the Award.[35]   Contrary to Paragraph No. 221 of the

Response, there is no confusion as to Hann's individual and direct violations of the

Trust Fund Statute as set forth, for example, in Paragraph No. 14 with respect to

knowledge and intent[36] and Paragraph No. 21 of the Award with respect to intent

to defraud under §162.005(1)(A).[37]  The Award speaks for itself.  Section III of the

Motion also describes in detail how the Award makes the findings necessary to

support §523(a)(4) liability.

Any further consideration by this Court of Hann's intentions or other aspects

of liability under §523(a)(4) would violate both the fundamental and universally

recognized precepts of collateral estoppel, even as those precepts are applicable in

bankruptcy dischargeability proceedings, and the stipulations and agreements of

the parties under which this litigation was submitted to arbitration.[38]

###### b.  *§523(a)(2)(A).*

With respect to §523(a)(2)(A), the Award likewise made specific,

subordinate, factual findings on the identical dischargeability issue in question, and

---

[34]  *See* Response, at ¶ 41 (Hann was a trustee); ¶ 59(a) ("trust funds were used to pay the Defendant's personal creditors and creditors of HBL"); ¶ 59(b) ("Defendant caused payments to be made to the Defendant's personal creditors and creditors of HBL").

[35]  *See* Award, at pp. 3-15, ¶¶ 10-21.

[36]  *See* Award, at p. 12, ¶ 14.

[37]  *See* Award, at p. 15, ¶ 21.

[38]  *See* Award, at pp. 1-2, ¶ 4.

the facts are easily discernible.  For example, and without limitation, Paragraph Nos. 10-20 of the Award detail the the false representations made by SKH to Kahkeshani primarily through the draw requests and the fraudulent use of funds by SKH and Hann.  Paragraph No. 10 includes a description of the process for preparing and submitting draw requests from SKH to Kahkeshani and that each draw request included a representation by SKH that specific dollar amounts for specific work described in the draw request "will be paid for."[39]   As further example, and without limitation, the Award also provides in Paragraph Nos. 11, 15, 18-19, and 25 an analysis of the misuse of funds paid pursuant to the draw requests.[40]

The issues submitted to arbitration included whether SKH was Hann's alter ego.[41]  Hann was the sole officer, director, and shareholder of SKH.[42]  Because of the egregious personal use of SKH funds by Hann and other factors, Clote determined that Hann should be held personally liable for the misrepresentations of SKH pursuant to a piercing the corporate veil or alter ego theory, as demonstrated in Paragraph No. 27 of the Award.  Section IV(D)(2) of the Motion, at pp. 47-55,

---

[39] *See* Award at p. 5, first bullet.

[40] *See* Award, at pp. 11-17,  ¶¶ 11, 15, 18-19, and 25

[41] *See* Award, at p. 2-3, ¶¶ 4-6.

[42] *See* Award, at p. 15, ¶ 20.

¶¶ 155-172 therein, demonstrates how these findings result in a nondischargeable liability under §523(a))(2)(A).

Hann's reasons for avoiding culpability under §523(a)(2)(A) are easily discredited because such reasons were decided against Hann in the arbitration. Regarding Paragraph Nos. 224 and 231 of the Response, any question of Hann's intentions and whether "Hann knew of the improper nature of the payments at the time they were made" is a fact determination decided conclusively against Hann that may not be re-litigated.  Regarding Paragraph No. 225-230 of the Response and the safe harbor provisions for the spending of trust funds and Hann's subjective beliefs, such issue again is water under the bridge because other, permissible applications of trust funds were decided by Clote, and Hann was provided credit for these amounts against the total damages.[43]   Hann had the opportunity to present and actually presented evidence on such issues.

   c.  *§523(a)(6).*

With respect to §523(a)(6), Hann similarly attacks the Motion by attempting to reargue facts that were at issue in decided in the arbitration. The Award makes specific, subordinate, factual findings the issues which encompasses the same prima facie elements as the bankruptcy issue.  The facts supporting Clote's finding on the relevant facts for §523(a)(6) are discernible from the Award.   Section

---

[43] *See* Award, at pp. 10-11; pp. 17-18, ¶¶ 28-29.

IV(D)(3) of the Motion, at pp. 47-55, ¶¶ 173-180 therein, demonstrates how these findings result in a nondischargeable liability under §523(a)(6).

**4.      Fraud, false representation, and/or false pretenses of SKH may be attributed to Hann for §523(a)(2)(A) liability.**

Although the Award is clear as to the individual and direct liability of Hann under the Trust Fund Statute and §523(a)(4) for fraud or defalcation of duty, the Award employs corporate veil piercing and/or the alter ego doctrine with respect to SKH to arrive at Hann's individual liability for fraudulent misrepresentation.[44] The Response asserts that alter ego liability is insufficient to result in the attachment of §523(a)(2)(A) liability because Clote was unable to determine that Hann personally made fraudulent misrepresentations regarding the draw requests and use of funds.[45]

Hann's position ignores the significance and application of the alter ego finding, specifically that, by the alter ego finding, Hann is deemed to be one and the same as SKH.  According to Texas law applicable here, "Under the alter ego theory, courts disregard the corporate entity when there exists such unity between corporation and individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice."[46] The alter ego

---

[44] *See* Award, at p.17, ¶ 27.

[45] *See* Response, at 29-30, ¶ 232; at 39, ¶ 235.

[46] *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).

determination in and of itself is sufficient to apply liability against Hann under §523(a)(4) for the fraudulent conduct of the disregard entity.[47]  Consequently, the finding that a debtor-defendant is the alter ego of an entity that committed fraudulent acts results in a nondischargeability under §523(a)(2)(A).[48]  The Court need not examine whether Hann individually committed fraud as sought by Hann in Paragraph Nos. 232 of the Response.

Hann also misinterprets and misrepresents *Neal*[49] and its progeny as to §523(a)(2)(A).  The source of the potential confusion of Hann comes from the oft-repeated phrase from *Neal*, and which phrase appears more recently in *Recoveredge*, that the fraud exception to discharge "contemplates frauds involving 'moral turpitude or intentional wrong; fraud implied in law which may exist ***without*** imputation of bad faith or immorality, is insufficient.'"[50]  The problem with Hann's position throughout this litigation and now in the Response is that

---

[47] *See Recoveredge, supra*, 44 F.3d at 1296; *Nibbi v. Kilroy (In re Kilroy)*, 357 B.R. 411, 430 (Bankr.S.D.Tex. 2006) (possibility of alter ego liability of debtor under §523(a)(2)(A) sufficient to prevent dismissal of claim under Rule 12(b)(6)); *State Farm County Mut. Auto. Ins. Co. v. Van Banning (in re Van Banning)*, 2004 Bankr. LEXIS 1994, 3-8 (Bankr.N.D.Tex. Dec. 8, 2004); *see also Hodnett v. Loevner (In re Loevner)*, 167 B.R. 824, 826 (Bankr.E.D.Va. 1994) (after satisfaction of the Virginia alter ego test, "the court may invoke the doctrine of piercing the corporate veil to hold debtor personally liable for acts of the corporation.").

[48] *See Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 698 (Bankr.N.D.Tex. 2011) ("[T]he Court has concluded that the Foundation has proven its state law fraud claim against HomeQwest and Autopilot, and that Arnette is personally liable to the Foundation for that fraud. …[T]he Court also concludes that this fraud judgment, in the amount of $999,377.19, is not dischargeable in accordance with section 523(a)(2)(A)[.]").

[49] *Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1878).

[50] *Recoveredge, supra,* 44 F.3d at 1297 (emphasis added).

14

Hann (*i*) skips over the application of the alter ego doctrine, and (*ii*) skips over the word "without" from the *Neal* limitation.  In other words, under the converse of the *Neal* limitation, fraud *with* or through the imputation of bad faith or immorality is sufficient under §523(a)(2)(A).

Reading the "without" in the *Neal* limitation properly is important because courts in the Fifth Circuit permit the imputation of fraud and fraudulent representations for purposes on nondischargeability under §523(a)(2)(A). Nondischargeable fraud or fraudulent representations can be imputed to innocent partners,[51] co-managing members of a limited liability company,[52] agents,[53] and spouses.[54]  Imputing nondischargeable fraud from one person to another person is consistent with an extension of such liability that also is available under the alter ego doctrine.

---

[51] *See Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1282 (5th Cir. 1992) (noting that for the purposes of dischargeability fraud can be imputed to an innocent partner regardless of knowledge or involvement).

[52] *See Pacific Addax Co. v. Lau (In re Lau)*, 2013 Bankr. LEXIS 4587, at *63 (Bankr.E.D.Tex. Nov. 4, 2013) ("In light of her status as a member and managing member of JNC Partners, LLC along with her husband, John Lau, and as a party who consistently ratified the fraudulent acts of her husband by knowingly retaining and utilizing the benefits derived by her JNC partner, Deborah Lau is equally liable to the respective Plaintiffs for the indebtedness obtained by her partner's false representations and such liability is excepted from her discharge as a debt obtained by false representations pursuant to 11 U.S.C. §523(a)(2)(A).").

[53] *See Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005).

[54] *See Sok San Pak v. Bo Kyoung Kim (In re Bo Kyoung Kim)*, 2013 Bankr. LEXIS 4005, 26-34 (Bankr. E.D. Tex. Sept. 25, 2013).

Furthermore, determining whether Hann personally made fraudulent misrepresentations or whether he is liable for fraudulent misrepresentations as the alter ego of SKH could be considered largely irrelevant for purposes of §523(a)(2)(A) liability.  "The test under section 523(a)(2)(A), however, is not whether the debtor actually procured the money, property, services or credit for him or herself.  Rather, the Code dictates that a particular debt is nondischargeable 'if the debtor benefits in some way' from the money, property, services or credit obtained through deception."[55]  "Section 523(a)(2)(A) is not designed to protect debtors; rather it is designed to protect the victims of fraud."[56]  The Award leaves no doubt that SKH made fraudulent misrepresentations to Kahkeshani and that Hann was the beneficiary of funds misused for his past businesses and personal uses.[57]  By these improper benefits that he received, Hann is culpable under §523(a)(2)(A).

**5.    Comment *i* does not limit the preclusive effect of the Award.**

The Response again attacks the preclusive effect of the Award, but such attack fails.  As discussed above, the agreement of the parties for the submission of

---

[55] *In re Luce*, *supra,* 960 at 1283 (internal citations omitted); *accord Lau, supra,* 2013 Bankr. LEXIS 4587, at *62-63; *see also* 4-523 Collier on Bankruptcy §523.08 (16th ed., Lexis 2015) ("The purposes of the provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors.").

[56] *See Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005)

[57] Hann admits such benefits in ¶ 59 of the Response.

this litigation to arbitration, as memorialized in Paragraph Nos. 4-6 of the Award, prohibits Hann from attacking the preclusive effect of the Award.

The Response also misconstrues the applicability of Comment *i* of §27 of the Restatement (Second) of Judgments and related authority as to the preclusive effect of the Award.  Section IV(C)(2) of the Motion, at pp. 28-31, ¶¶ 101-113, which addresses the preclusive effect of the Award and the impact of Comment *i*.

The Motion points out that the concern of Comment *i* and the instances when it has applied in the case law arise when there is some ambiguity as to the basis for an award of damages.  The Motion also points out that no such questions exist here because of the net amount of the misspent trust funds determined in the Award.  The same question of damages, based upon the amounts of trust funds paid by Kahkeshani and misused by Hann, existed for each basis of liability determined in the Award.

The concern over ambiguity in the assessment of damages as the true focus of Comment *i* was recently highlighted in the Southern District of Texas in a bankruptcy court case that recognized the preclusive effect of a state court judgment that contained jury findings of malice and gross negligence, but set for trial under §523(a)(6) the issue of which damages were attributable to malice (dischargeable) versus the damages attributable to gross negligence

(nondischargeable).[58]   No such further determination is necessary in this case because only one quantum of damages is available based upon the funds paid by Kahkeshani and misused by Hann, less the credits provided in the Award, and the damages awarded are nondischargeable for the underlying claims of Trust Fund Statute violations of fraudulent misrepresentations.

**6.      Response to Hann's cross motions for summary judgment.**

Paragraph Nos. 247-261 of the Response contain Hann's cross-motion for summary judgment (the "Cross-Motion").  With respect to the §523(a) issues, the Cross-Motion raises no new argument that is not otherwise addressed in Kahkeshani's Motion, Hann's Response, or above in this instant Reply. Nonetheless, for the completeness of the record, Kahkeshani will address each of the separate paragraphs of the Cross-Motion.

**a.   *Response and objection to Section A of the Cross Motion — §523(a).***

Hann denies Paragraph No. 247 of the Cross-Motion.  Hann is not entitled to a judgment for the reasons stated in the Motion and this Reply.

---

[58] *See Shaikh v. Memon (In re Memon),* 2014 Bankr. LEXIS 42 (Bankr.S.D.Tex. Jan. 6, 2014) ("In the instant case, the jury found, and the state court awarded judgment based on, nine defamatory false statements made by Debtor with malice. This finding by the state court jury is sufficient for a determination that the damages attributable to the debtor's malicious defamatory false statements are excepted from discharge under Section 523(a)(6). However, what is not determined by the state court judgment and findings is the extent to which the award of damages is attributable solely to Debtor's gross negligence, as opposed to Debtor's malice. ***The court concludes that the only issue remaining for trial is the amount of the damages awarded by the state court, which is attributable to Debtor's malice.***") (emphasis added).

Hann admits in part and denies in part Paragraph No. 248 of the Cross-Motion.   Kahkeshani relies on the Award, and the Award should be given preclusive effect.   When given the proper preclusive effect, the Award demonstrates that Kahkeshani is entitled to judgment under §§523(a)(2)(A), (a)(4), and (a)(6).   Although Kahkeshani believes that the Award is complete, sufficient, and should be given preclusive effect because of the agreements of the parties and the procedural history of this litigation, as well as a matter of law, and that it would be reversible error for this Court to determine otherwise, if any fact question should remain unresolved, Kahkeshani would be entitled to a trial on any such question(s) and not a summary disposition because of a supposed lack of evidence. It is absolutely incorrect for Hann to portray that there is a lack of evidence in support of Kahkeshani's claims.   Although Kahkeshani reiterates that the Award should be given preclusive effect, a complete record that was provided in the arbitration[59] would be available to both parties in any trial that would be conducted in this Court, as well as other evidence acquired during preparation for the arbitration.

---

[59] The parties presented in the arbitration four (4) days of testimony, twelve (12) witnesses, and at least 59 exhibits. *See* Award, at pp. 2-3, ¶¶7-9.

Kahkeshani denies Paragraph No. 249 of the Cross-Motion.  The Award, the Motion, and this Reply set forth complete and sufficient factual and legal bases for nondischargeability under §§523(a)(2) and (a)(6) (as well as §523(a)(4)).[60]

Kahkeshani admits in part and denies Paragraph No. 250 of the Cross-Motion.  *Bullock* addressed the defecation portion of §523(a)(4).  Scienter or other similar aspects of moral turpitude already were part of §523(a) jurisprudence prior to *Bullock.*  The Award, the Motion, and this Reply set forth complete and sufficient factual and legal bases for nondischargeability under §§523(a)(2), including whether a scienter requirement exist and/or was met by Hann.

Kahkeshani admits in part and denies in part Paragraph No. 251 of the Cross-Motion.  Kahkeshani admits that the Award found Hann liable for the fraud, fraudulent misrepresentation, and/or false pretenses of SKH by a veil piercing and/or alter ego theory.  The Award, the Motion, and this instant Reply demonstrate how the Award is conclusive as to Hann's liability for fraud, fraudulent misrepresentation, and/or false pretenses and thus Hann's nondischargeable liability under §523(a)(2)(A).

Kahkeshani admits in part and denies in part Paragraph No. 252 of the Cross-Motion.  The legal authorities cited speak for themselves.  Kahkeshani

---

[60]   Furthermore, it is interesting to note that Paragraph No. 249 of the Cross-Motion omits any mention of the Award lacking any effect with respect to §523(a)(4).

denies that application of such authority to this action prohibits and estopps Hann's liability under §523(a)(6).

Kahkeshani denies Paragraph No. 253 of the Cross-Motion.   The phrase quoted from the Award that Hann "may have hoped to repay the beneficiaries with other monies and sometime the future" is taken out of context from Award and is grossly misconstrued by the Response.  The proper reading of Paragraph No. 22 of the Award demonstrates that "may have hoped to repay" is a conditional phrase or one where Clote is merely referring to the position taken by Hann in order to demonstrate by contrast the actual findings made by Clote.  The full sentence from Paragraph No. 22 of the Award provides that: "While Stephen Hann may have hoped to repay the beneficiaries with other monies at some time in the future, the evidence was conclusive that Mr. Hann knew that the subcontractors and suppliers on Claimant's house were not being paid with Claimant's money."

Kahkeshani denies Paragraph No. 254 of the Cross-Motion.   As demonstrated at length in the Motion and this Reply, the Court should not consider any "evidence outside of the Arbitration."   Kahkeshani objects to any consideration given to any evidence outside of the Award, including especially the declaration of Hann included with the Response.

21

b. ***Response and objection to Section B of the Cross Motion — §727(a).***

Kahkeshani denies Paragraph Nos. 254-258 of the Cross-Motion regarding the pending claims of Kahkeshani for denial of discharge under §727. The proceedings in this adversary proceeding have been focused on sending this action to arbitration to determine the claims underlying §523 and the aftermath of arbitration including the motion practice resulting from the Award. The §727 action has been actually and/or effectively abated during this time. No scheduling order has been in place with respect to the §727 action, and Kahkeshani is entitled to the opportunity to conduct discovery and to otherwise prepare the §727 action for trial.

c. ***Response and objection to Section C of the Cross Motion —exemplary damages.***

Kahkeshani admits in part and denies in part Paragraph Nos. 259-261 of the Cross-Motion regarding exemplary damages. Kahkeshani seeks and is entitled to a judgment excepting from any discharge granted to Hann the damages provided in the Award, regardless of how those damages are characterized, plus any attorneys' fees and expenses and costs of court incurred during this action and/or subsequent to the Award to which Kahkeshani is entitled.

d. ***Conclusion regarding Cross Motion.***

Hann is not entitled to summary judgment with respect to the claims and causes of action of Kahkeshani under §523 and/or §727. At minimum, because of

the facts established in the Award, Kahkeshani is entitled to a judgment excepting from any discharge granted to Hann the damages provided in the Award, regardless of how those damages are characterized, and any subsequent attorneys' fees, expenses, and costs of court to which Kahkeshani is entitled.

## CONCLUSION AND PRAYER

WHEREFORE, Saeed Kahkeshani, Plaintiff, respectfully requests that the Court, based upon the Award, enter judgment against Hann pursuant to 11 U.S.C. §523(a) for the aggregate amount set forth in the Award plus pre-judgment interest and post-judgment interest, attorneys' fees and expense, and costs incurred in this action subsequent to the Award and/or to the extent permitted by applicable law, and that the Court deny Hann's cross motion for summary judgment.  Plaintiff respectfully requests such other and further relief to which Plaintiff is entitled at law or in equity.

Dated: July 31, 2015         Respectfully submitted:

WEYCER, KAPLAN, PULASKI
& ZUBER, P.C.

By: _/s/ Jeff Carruth_____
     JONATHAN D. SAIKIN
     (SBN 24041847)
     JEFF CARRUTH
     (SBN 24001846)
     11 Greenway Plaza, Suite 1400
     Houston, Texas 77046
     Telephone: (713) 961-9045
     Facsimile: (713) 961-5341
     jcarruth@wkpz.com / jsaikin@wkpz.com

**ATTORNEYS FOR PLAINTIFF
SAEED KAHKESHANI**

**<u>CERTIFICATE OF SERVICE</u>**


     I hereby certify that a true and correct copy of the foregoing was served on July 31, 2015 upon all parties in this matter through the ECF noticing system.

Reese W. Baker
Baker & Associates
5151 Katy Freeway, Suite 200
Houston, TX 77049

Pete Patterson
Patterson PC
4309 Yoakum Blvd
Houston, TX 77006

              _____/s/ Jeff Carruth_____
              JEFF CARRUTH