

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/12/2016

| | | |
|---|---|---|
| IN RE: | § | |
| STEPHEN K. HANN | § | |
| | § | |
| DEBTOR(S) | § | CASE NO.  12-31500-H5-7 |
| | § | |
| SAEED KAHKESHANI | § | |
| | § | |
| PLAINTIFF(S) | § | ADVERSARY NO.  12-03256 |
| | § | |
| VS. | § | |
| STEPHEN K. HANN | § | |
| | § | |
| DEBTOR(S) | § | |
| | § | |

**Order Regarding Motions for Summary Judgment**

Before the Court are two motions. Saeed Kahkeshani moves for summary judgment that his debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). Stephen K. Hann moves for summary judgment that he is entitled to his discharge under 11 U.S.C. § 727 and that Kahkeshani's debt is not nondischargeable under § 523. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding.

After reviewing the summary judgment evidence and the arguments of counsel, the Court concludes that Kahkeshani failed to prove his allegations under 11 U.S.C.

1

§§ 727, 523(a)(2)(A), (a)(4), and (a)(6). The Court further concludes that Hann is entitled to summary judgment on these causes of action.

## I. Procedural Background

On February 22, 2011, Kahkeshani sued SKH 2000, Inc. d/b/a Hann Builders, Hann Builders, Ltd. and Stephen K. Hann in state court for breach of contract and other causes of action arising from a residential construction contract.[1] Hann was the sole officer, director and shareholder of SKH 2000, Inc. On February 29, 2012, Hann filed a voluntary Chapter 7 petition. On April 13, 2012, Hann removed the state court case to this Court as Adv. No. 12-03196. On May 25, 2012, Kahkeshani commenced the instant Adv. No. 12-03256, to deny debtor a discharge under 11 U.S.C. §727 and to determine the dischargeability of his debt under 11 U.S.C. §523(a).

The residential construction contract provides for arbitration of any disputes. Accordingly, on March 29, 2013, the Court ordered the parties in the removed case, Adv. No. 12-03196, to arbitration.

In the final arbitration award, the parties agreed that the bankruptcy court would decide whether Hann is entitled to a discharge and/or whether a discharge

---

[1]Case No. 2011-11105, Saeed Kahkeshani, Plaintiff vs. SKH 2000, Inc. d/b/a Hann Builders, Hann Builders Ltd., and Stephen K. Hahn, Defendants in the 133rd District Court in and for Harris County, Texas against Stephen A. Hann, SKH 2000, Inc. d/b/a Hann Builders, Hann Builders Ltd., Stephen K. Hann, Inc. d/b/a Trinity Custom Builders, Stephen K. Hann, Inc. d/b/a TrinityHomes, Hann Builders-CW, Ltd.2 and Hann's wife, Judy Johnston Sandler Hann.

should be denied. The award states the parties agreed that all issues of fact relating to claims and defenses in Adv. No. 12-03256 and Adv. No. 12-03196 would be submitted for determination by the arbitrator. The parties stipulated that the arbitrator would decide such disputed issues of fact and law as required to determine:

> ... whether Hann violated Chapter 162 of the Texas Property Code, also known as the "Texas Construction Trust Fund Statute"; whether Hann engaged in common law fraud (including fraud in the inducement, fraud by misrepresentation, fraud by nondisclosure); whether Hann knowingly made false representations; whether Hann fraudulently induced Claimant to forego the statutory retainage by making false statements with the intent to deceive; whether Hann's conduct constituted civil theft or a breach of fiduciary duty; whether SKH 2000 breached its contract with Dr. Kahkeshani; whether Hann violated the Texas Business & Commerce Code, Chapter 24, the Uniform Fraudulent Transfer Act; whether Hann is an *alter ego* of the corporate Defendant SKH 2000; what if any actual damages arose because of a breach, if any, of duty owed to Claimant; and whether Claimant is entitled to recover exemplary damages and/or attorneys' fees and expenses as alleged.

The arbitrator issued his final award on April 8, 2014. The award found SKH 2000, Inc. liable to Kahkeshani for breach of contract and fraudulent misrespresentations; Hann liable as alter ego for SKH 2000, Inc.'s fraudulent misrepresentations; and Hann and SKH 2000, Inc., collectively liable for violating the Texas Construction Trust Fund Act, Tex. Prop. Code section 162.001, *et. seq*. The arbitrator found Hann and SKH 2000, Inc. jointly and severally liable for damages

and attorneys fees to Kahkeshani in the amount of $571,972.13.[2] The arbitrator's final

award is attached as Exhibit "A."

## II. Contentions of the Parties

Kahkeshani seeks summary judgment that his debt is nondischargeable based

on the preclusive effect of the arbitrator's findings in Adv. No. 12-03196. Kahkeshani

contends that his debt is nondischargeable under 11 U.S.C. §523(a)(2), (4), and (6)

in Adv. No. 12-03256. Kahkeshani's summary judgment evidence consists solely of

the arbitrator's final award.

Conversely, Hann seeks summary judgment discharging Kahkeshani's debt.

Hann urges that he is entitled to his discharge under 11 U.S.C. §727 and that his debt

to Kahkeshani is not nondischargeable under 11 U.S.C. §523(a)(2), (4), and (6).

Hann relies on the arbitrator's findings and his affidavit to show he lacked the

requisite level of intent necessary to render his debt nondischargeable as fraud under

11 U.S.C. §523(a)(2)(A), defalcation or embezzlement under (a)(4), or as a willful

and malicious debt under 11 U.S.C. §523(a)(6).  Further, Hann contends that the

---

[2]"Attorney's fees may not be recovered unless provided for by statute or by
contract between the parties." *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835
S.W.2d 75, 77 (Tex. 1992). Neither, Tex. Prop. Code Ann. § 162.001 *et. seq.,* nor
Tex. Civ. Prac. & Rem. Code Ann. § 38.001 allows for the recovery of attorney's
fees for a misapplication of construction trust funds. *See* Tex. Prop. Code Ann. §
162.001 *et. seq.*, Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

findings show there is no evidentiary support for Kahkeshani's allegation that Hann's discharge should be denied under 11 U.S.C. §727.

### III. Collateral Estoppel

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect as would courts of the state rendering the judgment. *See* 28 U.S.C. § 1738; *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 287-288 (1984). In contrast, federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award. *Id.* In *McDonald*, the Supreme Court held that an arbitration pursuant to a collective bargaining agreement did not preclude plaintiff's subsequent trial of § his 1983 suit. *Id.* The Court rejected the argument that plaintiff, as a party to a collective bargaining contract with an arbitration clause, waived plaintiff's claim that he was fired for the exercise of his First Amendment rights. *Id.*

In *Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014), the Fifth Circuit held:

> As a general matter, arbitral proceedings can have preclusive effect even in litigation involving federal statutory and constitutional rights, and the decision to apply it is within the discretion of the district court. As acknowledged in *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir.1991), the Court held in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), that collateral estoppel may apply in federal-court litigation to facts found in arbitral proceedings as long as the court considers the federal

interests warranting protection.

... A district court has "broad discretion" to decide whether to apply the doctrine, "at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Universal Am. Barge*, 946 F.2d at 1137.

746 F.3d 184 at 188.

Despite 28 U.S.C. § 1738, a bankruptcy court is not bound by a state court judgment when determining the dischargeability of a debt. *Brown v. Felsen*, 442 U.S. 127 (1979). In *Brown v. Felsen*, the Court held, ". . . the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of . . . [a] debt." *Id.* at 138-139.

In addition, issue preclusion does not bar a bankruptcy court from receiving evidence as to facts whereby that court may determine the character, and ultimately, the dischargeability of a debt. *Matter of Poston*, 735 F.2d 866, 869 (5th Cir. 1984). In *Poston*, the Fifth Circuit affirmed the bankruptcy court's determination that a state court default judgment lacked collateral estoppel effect in a dischargeability proceeding because fraud and false pretense recitals in the judgment were not supported by factual findings in the state court record. *Id.* at 868. The record included neither the statement of account allegedly attached to the state court petition, nor the transcript of the state court proceedings. *Id.* The *Poston* court held, "The recitals and conclusions contained in the state court default judgment, therefore, must be

supported by 'detailed facts sufficient as findings to meet the federal test of nondischargeability' and allow the bankruptcy court 'to discern from the record the subsidiary facts upon which the false pretense allegation was made.'" *Id.* at 869 (quoting *Matter of Shuler*, 722 F.2d 1253, 1257-58 (5th Cir.1984).)

### IV. False Pretenses, a False Representation, or Actual Fraud

Bankruptcy Code § 523(a)(2)(A) provides that a discharge under § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. §523(a)(2)(A).  For a debt to be non-dischargeable under § 523(a)(2)(A), a creditor must show: (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367, 372 (5th Cir.2005) (Upheld: The bankruptcy court's ruling that lender failed to prove debtor's intent to deceive when debtor failed to disclose a prior ship's mortgage and debtor testified he believed it had been extinguished.)

"Debts falling within  § 523(a)(2)(A) are debts obtained by frauds involving

moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *First Nat'l Bank v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir.1992) (Upheld: Bankruptcy court's acceptance of debtor's testimony explaining and rebutting bank's allegations.) To be a false representation or false pretense under § 523(a)(2)(A), a debtor's representation must have been: (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party. *In re Allison*, 960 F.2d 481, 483 (5th Cir.1992) (Upheld: Bankruptcy court's ruling that debtor's statements were knowing and fraudulent violating § 523(a)(2)(A), that debtor misrepresented the then current fact of his future intention and that the property owner who conveyed her property relied on debtor's representation that first mortgages would not exceed 20% of the purchase price.) Proof of actual fraud under § 523(a)(2)(A), requires proof that (1) the debtor made representations; (2) the debtor knew were false at the time they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir.1995) (Declining to attribute to debtor, the president, director and a shareholder of the corporation, the false statements of employees of corporation, made on behalf of the corporation.) A representation is a necessary

prerequisite for a showing of actual fraud under § 523(a)(2)(A). *See In re Ritz*, 787 F.3d 312, 321 (5th Cir. 2015) (Upholding the district court ruling that $163,999.38 contractual debt owed to Husky by Chrysalis Manufacturing Corp., of which debtor was a shareholder, was dischargeable.)

Here the arbitrator found that SKH made fraudulent misrepresentations in its draw requests to Claimant. However, the arbitrator also found there was no proof that Hann made any misrepresentations to Kahkeshani in the draw requests, as Hann did not prepare or sign the draw requests and none were sent to Hann. The award states:

> 25.    SKH made fraudulent misrepresentations to Claimant. In the draw requests, SKH asked for funds to pay for the work listed in the draw requests. Anyone reading the draw requests would reasonably conclude that SKI-I was representing that the funds that we, the subject of the draw request would be used to pay for the work listed in the draw request SKH did not intend to use the funds that were the subject of the draw requests to pay for the items listed on the draw requests. Karen Travelstead signed the draw requests. The evidence was that none of the draw requests were sent to Stephen Hann, with the possible exception of two. Email correspondence introduced into evidence revealed that a copy of Change Order No 5 (for cast stone) was sent to Stephen Hann. However, there is no record of what draw request in fact, were sent to Mr. Hann. There is insufficient record evidence to prove that Stephen H (as opposed to other SKH employees) was directly and personally responsible for misrepresentations contained in the draw requests. The Arbitrator is unable to conclude Stephen Hann, individually, made fraudulent misrepresentations to Claimant.

Further, in several liability findings, the arbitrator refers to Hann and SKH collectively as "Respondents." The arbitrator ultimately found Hann responsible for

SKH's misrepresentations to Kahkeshani under the theory of alter ego. In the context of a dischargeability proceeding, the Fifth Circuit restricts imputation to the debtor of another's fraudulent actions or misrepresentations to situations in which the other person is a partner or agent of the debtor. *In re Quinlivan*, 434 F.3d 314, 319 (5th Cir. 2005) ("This circuit imputes fraud to debtors only if the fraudulent representations were made by a formal partner or agent"); *see also Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1282 (5th Cir.1992) (a partner's fraud could be imputed to an innocent partner to make the innocent partner's debt nondischargeable under § 523(a)(2)(A)); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1297 (5th Cir. 1995) ("Luce is consistent with the general rule that '[a] debtor who has made no false representation may, nevertheless, be bound by the fraud of an agent acting within the scope of the debtor's authority.'")

In *RecoverEdge L.P.*, the Fifth Circuit rejected, as a matter of law, the creditor's contention that the fraud of a debtor's co-defendants who had made false statements on behalf of the corporation of which debtor was the president, director and shareholder, could be imputed to the debtor for purposes of § 523(a)(2)(A). *Id.* at 1296-1297. The arbitrator did not find and Kahkeshani does not allege that Hann and SKH or Hann and SKH's other employees are partners or are principal and agent.

As Hann's liability to Kahkeshani for fraudulent misrepresentations is based

solely on the imposition of SKH's liability via the theory of alter ego and the arbitrator found that Kahkeshani failed to prove any misrepresentations by Hann, the Court concludes that Kahkeshani failed to prove his debt is nondischargeable under § 523(a)(2)(A). Further, the parties to the arbitration fully developed and litigated during that proceeding all subsidiary facts pertaining to whether Hann made any misrepresentations to Kahkeshani. Because the arbitrator found that Kahkeshani failed to prove that Hann made any misrepresentations to him, the Court finds that further litigation of this issue is precluded. The Court concludes Hann is entitled to judgment that Kahkeshani's debt is not non-dischargeable under 11 U.S.C.§ 523(a)(2) based on actual fraud, false pretenses, or false representations.

## V. Defalcation in a Fiduciary Capacity

Kahkeshani asserts that his debt is non-dischargeable under §523(a)(4) for defalcation while acting in a fiduciary capacity, embezzlement, or larceny. *See* 11 U.S.C. §523(a)(4). Kahkeshani contends that the arbitrator found Hann liable for violating the Texas Construction Trust Fund Act. Therefore, he urges the debt is a nondischargeable debt for defalcation under 11 U.S.C. § 523(a)(4).

For a violation of the Texas Construction Trust Fund Act to constitute a non-dischargeable "defalcation" under 11 U.S.C. §523(a)(4), Kahkeshani must prove that Hann's conduct involved an intentional wrong, criminal recklessness, or moral

turpitude. *Bullock v. BankChampaign, N.A.*, __ U.S. __, 133 S. Ct. 1754, 1759-60, 185 L. Ed. 2d 922 (2013). Only a defalcation committed with those states of mind of intentional fraud, criminal recklessness or moral turpitude satisfies *Bullock.*

Moreover, the Texas Construction Trust Fund Act provides an affirmative defense when the trust funds that were not paid to the claimant were used to pay the trustee's actual expenses directly related to the construction of the improvement. *See* Tex. Prop. Code Ann.§ 162.031(b). *Morrell Masonry Supply, Inc. v. Lupe's Shenandoah Reserve, LLC*, 363 S.W.3d 901, 907-08 (Tex. App. – Beaumont 2012). In a nondischargeability proceeding, the creditor must prove that the debtor's use of trust funds exceeds the protection of the affirmative defense provided to contractors under the statute. *In re Nicholas*, 956 F.2d 110, 114 (5th Cir. 1992). In *Nicholas*, the Fifth Circuit stated, "Coburn objects . . . because . . . [the findings] do not apply to Nicholas the burden of proof of the affirmative defense under Texas law. This observation ignores that federal law, although initially requiring the debtor to make a prima facie showing that he is entitled to a discharge, ultimately places the burden on the creditor to prove that the debt falls within the § 523(a)(4) exception." The *Nicholas* opinion concludes, "[d]emonstrating the gap between receipts by Nicholas's company on the construction projects and his payments to contractors . . . [is insufficient]. Because the Texas statute permits application of trust fund receipts for

"actual expenses directly related" to the project . . . a beneficiary seeking to avail itself of § 523(a)(4) must adduce some evidence that funds were misapplied under this test." *In re Nicholas*, 956 F.2d at 113-114. *See also In re Pledger*, 592 Fed. Appx. 296, 302-303 (5th Cir. 2015) (Holding: 11 U.S.C. § 523(a)(4) did not render nondischargeable Pledger's debt to Ratliff Ready–Mix, L.P. for breach of fiduciary duty arising from Pledger's misapplication of funds as described in the Texas Construction Trust Fund Statute, Tex. Property Code § 162.031 because Pledger's use of the funds was covered by the statutory affirmative defense.)

The Texas Construction Trust Fund Act, § 162.031, provides:

(a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

(b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

(c) It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal

complaint or other notice of a pending criminal investigation.

(d) A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter.

Tex. Prop. Code Ann. § 162.031 (West).

"'Current or past due obligations' are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds." Tex. Prop. Code Ann. § 162.005(2) (West). Under the Texas Construction Trust Fund Act, "[a] trustee acts with 'intent to defraud' when the trustee retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds." Tex. Prop. Code Ann. § 162.005 (1)(A) (West). Thus, misapplication of trust funds under the Texas Construction Trust Fund Act occurs when: (1) the trustee owes unpaid obligations to the beneficiaries of the trust; (2) the trustee incurred the unpaid obligations for labor or materials furnished in the direct prosecution of the work under the construction contract; (3) the unpaid obligations are due and payable no later than 30 days following the trustee's receipt of the trust funds; (4) the trustee retains, uses, disburses, or diverts the trust funds without first paying in full all such current or past due obligations; and (5) the trustee retains, uses, disburses, or diverts

the funds intentionally, knowingly, or with the intent to deprive the beneficiaries of the trust funds.[3] *See* Tex. Prop. Code Ann. § 162.031; Tex. Prop. Code Ann. § 162.005(2); and Tex. Prop. Code Ann. § 162.005 (1)(A).

A violation of the Texas Construction Trust Fund Act subjects the trustee to criminal penalties.[4] *See* Tex. Prop. Code Ann. § 162.032; *In re N.A. Flash Found. Inc.*, 298 F. App'x 355, 360 (5th Cir. 2008) ("In a hypothetical case, NA Flash would be required to hold the amounts received from property owners in trust for its subcontractors on those projects, including Palmetco, or face criminal liability for misuse of trust funds. Tex. Prop. Code Ann. §§ 162.001(a), 162.032.")

---

[3]Intent to deprive is not defined in the Texas Construction Trust Fund Act, but the phrase is defined in Tex. Penal Code Ann. § 31.01 (2) which states that "deprive" means "(A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner; (B) to restore property only upon payment of reward or other compensation; or (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely."

[4]§ 162.032. Penalties

(a) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter commits a Class A misdemeanor.

(b) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter, with intent to defraud, commits a felony of the third degree.

(c) A trustee who fails to establish or maintain a construction account in violation of Section 162.006 or fails to establish or maintain an account record for the construction account in violation of Section 162.007 commits a Class A misdemeanor.

Tex. Prop. Code Ann. § 162.032.

Civil liability for a misapplication of construction trust funds under Tex. Prop.

Code Ann. § 162.031, may be imposed by demonstrating that the trustee used

construction trust funds for non-trust purposes with the "intent to deprive" the

beneficiaries of those funds. *See* Tex. Prop. Code Ann. § 162.005 (defining "intent

to defraud" as diversion of trust funds with the "intent to deprive" the beneficiaries

of the trust funds.)  In contrast, criminal liability for a misapplication of construction

trust funds under the statute requires proof of "intent to deprive" and of "intent to

defraud." *See* Tex. Prop. Code Ann.§ 162.032 (West); *see also* Tex. Penal Code Ann.

§ 6.02.[5]

---

[5]Tex. Penal Code Ann. § 6.02 provides:

> (a) Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.
>
> (b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.
>
> (c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.
>
> (d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:
>
> (1) intentional;
> (2) knowing;
> (3) reckless;

Tex. Prop. Code Ann.§ 162.032 provides:

> (a) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter commits a Class A misdemeanor.
>
> (b) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter, with intent to defraud, commits a felony of the third degree.
>
> (c) A trustee who fails to establish or maintain a construction account in violation of Section 162.006 or fails to establish or maintain an account record for the construction account in violation of Section 162.007 commits a Class A misdemeanor.

Tex. Prop. Code Ann.§ 162.032 (West).

The Fifth Circuit has concluded that civil liability for a trustee's misapplication of construction trust funds under Texas statutes does not satisfy the level of mental culpability required for a nondischargeable debt for fraud or defalcation under 11 U.S.C. § 523(a)(4). In *Matter of Boyle*, 819 F.2d 583, 588-89 (5th Cir. 1987), the Fifth Circuit stated:

> Under the Texas statute, the diversion is wrongful when done only if it is done with intent to defraud. Otherwise, the sole consequence-and this resulting from judicial construction rather than express statutory provisions-is that the diverter becomes a personal guarantor. If the

---

(4) criminal negligence.

Tex. Penal Code Ann. § 6.02 (West).

claims are paid by the corporate builder, this status may be immaterial; but if they are not, this does not mean that the nonfraudulent diversion was wrongful when made. There being no finding or evidence of fraud on Boyle's part, nor any basis for any theory of fiduciary defalcation other than the Texas statute itself, we hold that  it was error to sustain Abilene Lumber's objection to the discharge of these debts of Boyle. Accordingly, we reverse the courts below and order that appellee's objections to the discharge of these debts of Boyle be denied.

*Matter of Boyle*, 819 F.2d 583, 592-93 (5th Cir. 1987) (citations omitted.)

Subsequent to *Boyle*, the Texas Construction Trust Fund Act was amended effective September 1, 1997 and effective September 1, 1999. The amendments to the statute broadened "intent to defraud" to include the trustee's failure to establish and maintain a construction account when constructing a residential homestead and the trustee's disbursement of trust funds paid in reliance on an affidavit by the trustee if the affidavit contains false information relating to the payment of current or past due obligations. *See* Tex. Prop. Code Ann.§ 162.005(1)(B) and (C).

In addition, the arbitrator found that Hann did not violate Tex. Prop. Code Ann.§ 162.005(1)(B) and (C). *See* arbitrator's finding no. 23, "23. There is no evidence to support violations of Sections 162.005(l)(B) and (C)." The 2009 amendments to the Texas Construction Trust Fund Act added protection for the property owner as beneficiary of the trust funds. *See* Tex. Prop. Code Ann.§ 162.003(b).Consequently, none of the amendments change the Fifth Circuit's analysis

in *Boyle,* that civil liability for violating the Texas Construction Trust Fund Act is an

insufficient basis for finding a nondischargeable defalcation under 11 U.S.C.

§523(a)(4) is unaffected and constitutes binding precedent.

In *In re Tran*, 151 F.3d 339 (5th Cir.1998), the Fifth Circuit described the type

of trust required under 11 U.S.C. § 523(a)(4):

> Under § 523(a)(4), "fiduciary" is limited to instances involving express
> or technical trusts. The purported trustee's duties must, therefore, arise
> independent of any contractual obligation. The trustee's obligations,
> moreover, must have been imposed prior to, rather than by virtue of, any
> claimed misappropriation or wrong. Constructive trusts or trusts ex
> malificio thus also fall short of the requirements of § 523(a)(4).

> Statutory trusts, by contrast, can satisfy the dictates of § 523(a)(4). It is
> not enough, however, that a statute purports to create a trust: A state
> cannot magically transform ordinary agents, contractors, or sellers into
> fiduciaries by the simple incantation of the terms trust or fiduciary.
> Rather, to meet the requirements of § 523(a)(4), a statutory trust must
> (1) include a definable res and (2) impose "trust-like" duties.

*Matter of Tran*, 151 F.3d 339, 342-43 (5th Cir. 1998).

The *Tran* court further stated:

> [The construction fund statute] does not prohibit a fund holder from
> paying, without any fraudulent intent, creditors on one project with
> surplus funds left over from earlier work and then using funds provided
> for that later project on still other work. In short, the statute does not
> create red, blue, and yellow dollars each of which can only be used for
> red, blue, or yellow construction project. We held that, absent such an
> affirmative requirement, the subject statute did not make fiduciaries out
> of all contractors for the purposes of § 523(a)(4), but rather made
> fiduciaries of only those contractors who diverted funds with the intent

ailed to                                    19

to defraud. In Coburn Company of Beaumont v. Nicholas, . . . we again rejected the argument that the statute elevated every contractor who accepts funds or loans under a construction contract to a § 523(a)(4) fiduciary. Our discussion of the significance of the absence of a statutory prohibition of spending putative trust funds for non-trust purposes does not suggest the converse, i.e., that the mere inclusion of such a prohibition would alone be sufficient to create a fiduciary relationship under the debt discharge exception. The absence of such a prohibition is telling, though, because without such a requirement, the supposed trustee appears not so much to be responsible for managing a beneficiary's funds on the beneficiary's behalf as to be engaged in a typical agency relationship.

*Matter of Tran*, 151 F.3d 339, 343-44 (5th Cir. 1998).

Even assuming the Texas Construction Trust Fund Act is a sufficient basis for

a finding of nondischargeability under 11 U.S.C. § 523(a)(4), the arbitrator's finding

concerning Hann's scienter does not meet the level of mental culpability required by

*Bullock*, __ U.S. __, 133 S. Ct. 1754, 1759-60. Specifically the arbitrator found:

21. Respondents argue that there is no evidence of the requisite "intent to defraud" as defined by Section 162.005(1) Tex. Prop. Code. Respondents' counsel concedes that "SKH 2000 may have acted negligently or even with gross negligence." (Pete Patterson's undated letter/brief regarding Trust Fund Statute, p. 2). Under 162.005(l)(A), a trustee acts with "intent to defraud" when the trustee "retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds." In the case at bar, the evidence proved that Stephen Hann used, disbursed or diverted trust funds with intent to deprive the beneficiaries of the trust funds.

The arbitrator found that Hann acted with an "intent to defraud" by using the

trust funds with the intent to deprive the beneficiaries of trust funds. While such a

level of mental culpability satisfies the level of mental culpability required to find a civil violation of the Texas Construction Trust Fund Act, it does not rise to the level of mental culpability required by *Bullock* for a nondischargeable debt for defalcation under 11 U.S.C. § 523(a)(4). Further, the only fraud attributed to Hann by the arbitrator was through alter ego liability for the misrepresentations made by SKH. As noted previously, imputed liability for fraud is an insufficient basis for a nondischargeable debt under 11 U.S.C. § 523(a). The Court concludes that Hann is entitled to summary judgment that Kahkeshani failed to prove his debt is nondischargeable under 11 U.S.C. § 523(a)(4).

## IV. Embezzlement[6]

Kakeshani alleges that the findings and conclusions of the arbitration award demonstrate Hann's liability under §523(a)(4) for embezzlement. "Embezzlement is defined for purposes of § 523(a)(4) as the 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.' . . . To meet the definition of 'embezzlement,' there must be proof of the debtor's fraudulent intent in taking the property." *Matter of Miller*, 156 F.3d 598, 602-603 (5th Cir. 1998) (Holding that neither state court jury nor state trial judge in

---

[6]Kahkeshani does not seek a judgment making the arbitrator's award nondischargeable under the larceny provision of §523(a)(4).

entering judgment on the verdict decided the question of Miller's intent in misappropriating or misusing Abrams's proprietary information.)  The Court finds that the facts found by the arbitrator do not give rise to a non-dischargeable debt due to embezzlement under § 523(a)(4). Hann is entitled to summary judgment on this issue.

### V. Willful and Malicious Injury

Bankruptcy Code section 523(a)(6) provides that a discharge under section 727 of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (Debt arising from a medical malpractice judgment, attributable to negligent or reckless conduct, is not a deliberate, intentional act under § 523 (a)(6).)  An injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm. *Matter of Miller*, 156 F.3d 598, 606 (5th Cir. 1998). A debtor is not vicariously liable for the willful or malicious acts of another. *In re Tomasek*, 175 Fed.Appx. 662, 668 n. 4 (5th Cir. 2006) ("Under § 523(a)(6), it is the debtor who must act in causing the willful and malicious injury to another or the

property of another entity. It has been universally held that a person's willful and malicious actions cannot be imputed to another person or entity for the purpose of holding that debt nondischargeable under § 523(a)(6).")  The arbitrator made no findings that Hann acted with willful or malicious intent.

The Court concludes that Kahkeshani has adduced no evidence showing that his debt is a willful and malicious injury caused by Hann. Hann is entitled to summary judgment that Kahkeshani's debt is not non-dischargeable under 11 U.S.C. §523(a)(6).

## VI. Miscellaneous Findings

The arbitrator found there was no evidence to show a violation of the Texas Theft Liability Act, section 134.001, et seq., Tex. Civ. Prac. & Rem. Code. The arbitrator also found there was no evidence to show a violation of the Texas Uniform Fraudulent Transfer Act, section 24.001, Tex. Bus. & Com. Code. See arbitrator's finding no. 26, "The record evidence is insufficient to establish liability on the basis of (a) the Texas Theft Liability Act, Section 134.001, et seq. Tex. Civ. Prac. & Rem. Code; or (b) the Texas Uniform Fraudulent Transfer Act, Section 24.001, et seq. Tex. Bus. & Com. Code."

Kahkeshani's Complaint includes a request for "nondischarge of exemplary damages." Kahkeshani was not awarded  exemplary damages by the arbitrator. The

Court concludes that Hann is entitled to summary judgment that any claim by Kahkeshani for exemplary damages is discharged.

### VIII. Discharge under § 727

Kahkeshani contends that Hann should not be discharged under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5). The Complaint alleges that $200,000 of funds paid by Kahkeshani to SKH 2000 Inc. and transferred to Hann are unaccounted for and that Hann is unwilling or unable to explain the disposition of the funds. However, the arbitrator found, "Nor is there evidence that [Hann and SKH 2000 Inc.] failed to maintain sufficient records as required under Section 162.007 [Tex. Prop. Code]." The arbitrator's fact findings show no evidence that Hann committed any act in violation of 11 U.S.C. §727. Kahkeshani did not offer any controverting evidence in response to Hann's motion for summary judgment. Kahkeshani failed to raise a genuine issue of material fact, therefore summary judgment is appropriate. Summary judgment in favor of Hann granting his discharge under 11 U.S.C. §727 is **GRANTED**.

### IX. Conclusion

Based on the foregoing, it is

**ORDERED** that Kahkeshani's Motion for Summary Judgment is **DENIED**; it is further

**ORDERED** that Stephen K. Hann's Motion for Summary Judgment is

**GRANTED.**

Signed this _12th_ day of _January_, 2016 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE